509 F.2d 1093
 Terry Lee RADCLIFF, Petitioner-Appellant,
v.
Park ANDERSON, Warden, Respondent-Appellee.
William Lynn STRINGFIELD, Petitioner-Appellee,
v.
John GRIDER, Warden, Oklahoma State Reformatory, and Sam
Isaacs, Probation andParole Officer, Department of
Corrections, State of Oklahoma,
Respondents-Appellants.
 Nos. 73--1520, 73--1550.
 United States Court of Appeals,
Tenth Circuit.
 June 14, 1974.
Rehearing Denied Jan. 24, 1975.
Certiorari Denied April 21, 1975.
See 95 S.Ct. 1667.
 
 Fred P. Gilbert, Tulsa, Okl. (Andrew T. Dalton, Jr., Tulsa, Okl., on the brief) for appellant Radcliff and appellee Stringfield.
 Kay Karen Kennedy, Asst. Atty. Gen. (Larry Derryberry, Atty. Gen. of Okl., on the briefs), for appellee Anderson and appellants Grider and others.
 Before BREITENSTEIN, SETH and DOYLE, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The issue is the retroactivity of Lamb v. Brown, 10 Cir., 456 F.2d 18, which held that 10 Okl.St.Ann. § 1101 (Supp.1969) was unconstitutional in that it violated the equal protection clause of the Fourteenth Amendment. Section 1101 allowed the benefits of juvenile court proceedings to females under the age of 18 years but limited those benefits to males under the age of 16 years. The opinion concluded with the statement that: 'This ruling shall not apply retroactively.' Ibid. at 20.
 
 
 2
 We now have two habeas corpus cases each brought in the Northern District of Oklahoma by a male who was denied juvenile court proceedings because of age. Petitioner-appellant Radcliff, at age 17, was prosecuted as an adult and found guilty of unauthorized use of a motor vehicle. Petitioner-appellee Stringfield, when 17 years old, was prosecuted and sentenced as an adult for second degree burglary. Each claims that § 1101 unconstitutionally deprived him of the right of juvenile proceedings and, hence, the adult proceedings cannot be sustained.
 
 
 3
 No. 73--1520 is an appeal from the denial of the habeas petition of Radcliff. Judge Daugherty construed the Lamb decision as deciding that the issue there involved was procedural rather than substantive and held that he was bound to follow the declaration that Lamb had no retroactive application. Accordingly, he dismissed the habeas action.
 
 
 4
 No. 73--1550 is an appeal by the warden of the Oklahoma reformatory from the grant of the habeas petition of Stringfield. Judge Barrow held that the action taken in Lamb was substantive and that the declaration of nonretroactivity was dictum, not binding on him. Accordingly, he granted the habeas writ.
 
 
 5
 The Lamb decision is the law of the circuit and we are concerned only with its retroactivity. There are decisions that an unconstitutional law must be taken as having no effect whatsoever from the very date of its enactment. See Chicago, Ind. & L. Ry. Co. v. Hackett, 228 U.S. 559, 566, 33 S.Ct. 581, 57 L.Ed. 966; Norton v. Shelby County, 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178; and Ex parte Siebold, 100 U.S. 371, 376, 25 L.Ed. 717. Later cases have rejected this holding. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329, and Linkletter v. Walker, 381 U.S. 618, 622--629, 85 S.Ct. 1731, 14 L.Ed.2d 601. Accordingly, retroactivity must be determined in the light of recent decisions of the Supreme Court.
 
 
 6
 During its last term the Court reviewed the subject in Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 and Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873. The opinions in those cases analyzed and scrutinized the Court's previous decisions on retroactivity. Any attempt on our part to reexplore the field would be nonproductive. It is enough that none of the decisions referred to in Robinson and Gosa treat the specific issue before us. Robinson was concerned with the retroactivity of Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, which barred, on double jeopardy grounds, two prosecutions, state and municipal, based on the same act or offense. In holding that Waller was fully retroactive, the Court said that the practical result of the constitutional provision against double jeopardy 'is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial.' 409 U.S. at 509, 93 S.Ct. at 878.
 
 
 7
 Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873, was concerned with the retroactivity of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291, which held that a serviceman charged with a nonservice connected crime was entitled to indictment by grand jury and trial in a civilian court. A plurality of the Supreme Court held that O'Callahan should 'be accorded prospective application only.' 413 U.S. at 685, 93 S.Ct. 2926. The Court recognized three dominant considerations applicable to a determination of retroactivity. They were (1) purpose of the new constitutional rule, 413 U.S. at 679, 93 S.Ct. at 2936, (2) reliance on the old rule, Ibid. at 682, 93 S.Ct. at 2937 and (3) effect on the administration of justice, Ibid. The Court commented that consideration also must be given to 'the impact of a retroactivity holding on the interests of society when the new constitutional standard promulgated does not bring into question the accuracy of prior adjudications of guilt.' Ibid. at 685, 93 S.Ct. at 2938.
 
 
 8
 The application of the Gosa tests to the issue before us produces no ready answer. The purpose of Lamb was to end sex discrimination in juvenile proceedings. The reliance on § 1101 was confined to the period between January 13, 1969, its effective date (see statement preceding § 1101 in 1 O.S.1971), and the March 16, 1972, decision in Lamb. The record contains nothing to show the impact of Lamb on the administration of justice, other than the two cases before us and the possibility of others wherein sex discrimination occurred during the three-year period. The interests of society must be balanced against 'essential justice' to the individuals. See Gosa, 413 U.S. at 685, 93 S.Ct. 2926.
 
 
 9
 We have here no question of the accuracy of the fact-finding process. We assume that the adult proceedings to which these boys were subjected resulted in the determination of the truth. In any event, the integrity of the fact-finding process is not an absolute criterion. See Robinson, 409 U.S. at 508, 93 S.Ct. 876 citing Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. Robinson points out that the post-Linkletter cases giving prospective application to procedural rules did not involve 'the basic fairness of the earlier trial.' 409 U.S. at 509, 93 S.Ct. at 878.
 
 
 10
 The Oklahoma statutes give to children benefits not allowable to adults. These include form of petition (§ 1103), custody (§ 1104), release to parents (§ 1107), temporary detention (§ 1108), conduct of hearings, including a provision for privacy (§ 1111), and discretionary certification for adult proceedings after a preliminary hearing (§ 1112(b)).
 
 
 11
 Mr. Justice Black, concurring in In Re Gault, 387 U.S. 1, 59, 87 S.Ct. 1428, 1460, 18 L.Ed.2d 527, said that the juvenile laws 'provide a system of courts, procedures, and sanctions deemed to be less harmful and more lenient to children than to adults.' The petitioners were denied the benefits of the system which Oklahoma provides for children. Accordingly, we are concerned here with both basic fairness and essential justice.
 
 
 12
 Woodall v. Pettibone, 4 Cir., 465 F.2d 49, dealt with the retroactivity of a federal decision holding unconstitutional upon the ground of denial of equal protection certain Maryland statutes permitting different treatment of juveniles in mentioned geographical areas. The court said that to deny in one area the opportunity to take advantage of diminished responsibility as a juvenile and to allow it in another area is 'so fundamentally unfair as to impeach the validity of the 'adult' proceedings and render unreliable the guilty verdicts obtained in these proceedings.' 465 F.2d at 52.
 
 
 13
 A certiorari application in Woodall was denied by the Supreme Court, see 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044, on the same day that it decided Gosa. Although denial of certiorari has normally no implication or inference, we believe that the denial in Woodall, when coupled with the disparity of views expressed in the four opinions filed in Gosa, is some indication of the attitude of the Supreme Court towards the problem before us. Cf. United States v. Kras, 409 U.S. 434, 443, 93 S.Ct. 631, 34 L.Ed.2d 626.
 
 
 14
 No question of retroactivity was presented in Lamb. The statement that its ruling should not apply retroactively, see 456 F.2d at 20, is dictum which arises no higher than 'comment merely obiter.' Hawks v. Hamill, 288 U.S. 52, 59, 53 S.Ct. 240, 77 L.Ed. 610. We believe that the principles of 'basic fairness' mentioned in Robinson and 'essential justice' mentioned in Gosa require that the Lamb decision be applied retroactively.
 
 
 15
 In 73--1520, Radcliff, the judgment is reversed and the case is remanded to the district court for further proceedings in the light of this opinion.
 
 
 16
 In 73--1550, Stringfield, the judgment is affirmed.
 
 SETH, Circuit Judge (dissenting):
 
 17
 I respectfully dissent from the majority opinion. The panel which decided Lamb v. Brown, 456 F.2d 18 (10th Cir.), stated that the holding therein would be applied prospectively only. This to me is a provision properly part of the opinion to express its application and effect. Such a statement is within the authority of a court in the application of its opinions, and is an expression of court policy on the subject. Thus the matter of whether the issue was raised by the parties is not a consideration. Parties are not expected to raise in the pleadings matters relating to an application of an opinion in the same case.
 
 
 18
 The petitions for rehearing are severally denied. Chief Judge LEWIS, Judges BREITENSTEIN, HOLLOWAY, McWILLIAMS, and DOYLE concurring. Judges SETH and BARRETT dissenting. Judge HILL not participating.
 
 ON PETITIONS FOR REHEARING
 
 19
 PER CURIAM.
 
 
 20
 The decision herein holds only that the 1972 decision in Lamb v. Brown, 10 Cir., 456 F.2d 18, declaring void on constitutional grounds a 1969 Oklahoma statute, 10 Okl.St.Ann. § 1101 (Supp.1969), shall be applied retroactively in the cases before us.
 
 
 21
 The male habeas petitioners in the cases before us were denied the benefits of the Oklahoma statutes pertaining to juveniles. Those benefits were available to females. Lamb says that this discrimination between the sexes is impermissible. The issue in the cases before us is whether the petitioners should be denied the treatment given the petitioner in Lamb because of the statement in that case that it should not be applied retroactively. Integrity of the fact finding process is not determinative. Basic fairness and essential justice demand that these petitioners be treated no differently than the petitioner in Lamb.
 
 SETH, Circuit Judge (dissenting):
 
 22
 I must dissent from the majority opinion because, in the final analysis, it appears to me to be based on a pre-Linkletter view of the problem, and on a similar position taken in the Fourth Circuit of Woodall v. Pettibone, 465 F.2d 49 (4th Cir.). The adoption by the majority of a standard that any constitutionally unequal classification requires retroactive application will prevent this court from exercising a permitted and proper freedom of choice, and the use of a worth-while tool of good judicial administration. The opinion also creates a totally unnecessary conflict with state administration of justice.
 
 
 23
 To arrive at the result it did, the majority must find that the trials of the sixteen- and seventeen-year-old offenders as adults were in some way defective, and the verdicts arrived at therein were 'unreliable.' It so found those trials to be wanting in the ascertainment of the truth. There were no facts relating to these trials to develop this issue, and the unreliability of the trials was found by complete reliance on the rationale of Woodall v. Pettibone, 465 F.2d 49 (4th Cir.).
 
 
 24
 Woodall v. Pettibone concerned a prior decision which had held invalid a state law permitting the trial as adults of sixteen- and seventeen-year-old offenders for offenses in the city of Baltimore. The court said that the invalid limitation to Baltimore made the trials there unfair. The court there said:
 
 
 25
 '. . . To deny juveniles in Baltimore the opportunity of such a defense ('. . . of his diminished responsibility as a juvenile') and to allow it to all other juveniles in Maryland seems to us so fundamentally unfair as to impeach the validity of the 'adult' proceedings and render unreliable the guilty verdicts obtained in these proceedings.'
 
 
 26
 The defense of 'diminished responsibility' is, of course, the same matter as the unequal classification; therefore, the unequal classification makes the adult verdicts unreliable under the rationale in Woodall.
 
 
 27
 The reasoning of the majority here thus is: The classification was unconstitutional, in that some were tried as juveniles and some as adults when all should have been tried as juveniles. Therefore, the verdicts in the adult trials were 'unreliable.' The 'Therefore' part is difficult to jump, but it is the only way to support the retroactivity result. The step thus must be taken by the majority. The 'Therefore' need not, and should not be followed by such a surprise. The complete reliance by the majority on Woodall v. Pettibone, 465 F.2d 49 (4th Cir.), and on the denial of certiorari in that case, is unusual in view of the treatment by the Supreme Court of the same problem in Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388, and in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.
 
 
 28
 The Court in Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388, considers the uneven effect of nonretroactive application of decisions. It would seem preferable to follow Williams and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, rather than Woodall. In Williams the plurality opinion said on this point, to distinguish it from the situation where the new constitutional doctrine overcomes an aspect of the trial that substantially impairs its truth-finding function:
 
 
 29
 'It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results but to serve other ends.'
 
 In Stovall v. Denno, the Court said:
 
 30
 'Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making.'
 
 
 31
 As indicated above, the original adult forum trials must be invalidated to reach the retroactive conclusion. Stovall v. Denno and Williams v. United States do not require nor even lead to such a result, but the majority instead chooses Woodall. Once the adult trials are invalidated, the majority concludes with a sweeping statement which is the basis of the opinion:
 
 
 32
 'We believe that the principles of 'basic fairness' mentioned in Robinson and 'essential justice' mentioned in Gosa require that the Lamb decision be applied retroactively.'
 
 
 33
 The quotation has a disarming ring of simplicity to it, and indeed who can oppose 'basic fairness' and 'essential justice.' But the choice is not so easily stated and furthermore, neither of the cases referred to leads to the conclusion indicated. The terms quoted above by the majority are not used in the Robinson and Gosa opinions in the way the majority opinion uses them, and certainly did serve as a basis for the decisions.
 
 
 34
 In Robinson v. Neil, 409 U.S. 505, at 509, 93 S.Ct. 876, at 878, 35 L.Ed.2d 29 the Court said:
 
 
 35
 'A number of the constitutional rules applied prospectively only under the Linkletter cases were found not to affect the basic fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct, Mapp v. Ohio, (367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081), supra.' (Emphasis added.)
 
 
 36
 The Court gives examples of rules affecting the fairness of the trials.
 
 
 37
 The issue is not here raised as to the 'fairness' of any trial, the procedures as such are not attacked as being unfair, nor is the comparative accuracy of the ascertainment of the truth at issue. The mention of 'fairness' of the trial raises an issue not presented by the parties and not in the case.
 
 
 38
 As to the 'essential justice' referred to by the majority in the quotation above, the Court in Gosa did not use the term the way the majority does. The Court in Gosa v. Mayden, 413 U.S. 665, at 685, 93 S.Ct. 2926, at 2938--2939, 37 L.Ed.2d 873 said:
 
 
 39
 'We must necessarily also consider the impact of a retroactivity holding on the interests of society when the new constitutional standard promulgated does not bring into question the accuracy of prior adjudications of guilt. Wholesale invalidation of convictions rendered years ago could well mean that convicted persons would be freed without retrial, for witnesses, particularly military ones, no longer may be readily available, memories may have faded, records may be incomplete or missing, and physical evidence may have disappeared. Society must not be made to tolerate a result of that kind when there is no significant question concerning the accuracy of the process by which judgment was rendered or, in other words, when essential justice is not involved.' (Emphasis added.)
 
 
 40
 Thus the Supreme Court again refers to the accuracy of the process by which judgment was rendered or, in other words, when 'essential justice' is not involved. Here again there is no such issue before us of the 'accuracy' of the process. This matter is raised by the majority.
 
 
 41
 It is apparent that the use of the terms quoted by the Supreme Court was to refer to actual procedural-mechanical failures in the trials themselves which rendered the fact-finding process questionable. We, of course, have no specifics here, and nothing whatever relating to the actual fact-finding process. The issues and the initial Lamb case instead concern the selection of alternative processes, the adult prosecution or the juvenile proceedings, each fair and each equally capable of ascertainment of the truth. There are obvious advantages as to penalties and related consequences in the juvenile proceedings over the adult prosecution. Otherwise we would not have these cases. This disparity is, of course, of constitutional magnitude as decided in Lamb, but this does not mean, as the majority decides, that 'Therefore' the adult trials did not arrive at the truth and the verdicts are questionable. The choice was one of penalty-procedure, and a choice not dominated nor dictated by matters relating to the ascertainment of the truth. The choice was between two equally good methods to ascertain the truth; the consequences which followed were obviously different. In these circumstances, the result should follow that in Gosa v. Mayden,--prospective application, rather than a pre-Linkletter standard.
 
 
 42
 The majority opinion would not permit this court in the future to make a determination that an opinion in a criminal appeal be applied prospectively only. If the past adult trials were invalid under the circumstances here present, it is impossible to imagine any situation where nonretroactivity could be applied. Prospective application is permitted under Linkletter, Gosa v. Mayden, Wolff v. McDonnell (418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935), considered in Stovall v. Denno, and other recent cases. Here instead there is imposed the rigidity of prior constitutional theory referred to above.
 
 
 43
 The Court, in Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388, said of Linkletter:
 
 
 44
 'Relying on prior cases, we firmly rejected the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be ignored.'
 
 
 45
 Regardless of the freedom of choice available, the majority opinion rejects a consideration of the consequences of the decision upon the administration of the criminal laws in the state over the last thirty years. There is no question as to the actual validity or regularity of the convictions in the past under the state classification based on age and sex. The sixteen- to eighteen-year-old offenders who have been convicted from 1941 to 1973 as adults were accorded the due process rights available to all. The state indicates that these number in the thousands. The impact upon the state of retroactive invalidation of these convictions will be very severe and in any event is an unnecessary act.
 
 
 46
 It is still an unknown factor and ignored by the majority whether the juvenile court would nevertheless have certified these or many other of the many offenders as adults.
 
 
 47
 I also see no reason why this court cannot designate in an opinion a date when it will be applicable. Historically this has been done, and it is also sound judicial administration to do so in proper circumstances. Under the majority opinion, however, this court is now precluded from doing so. The opinion holds instead that the parties must raise the issue. If the court does it on its own motion, or as an administrative matter, it has uttered some low form of dictum which the opinion says, '. . . arises no higher than 'comment merely obiter." This certainly is not very high, even on the dictum scale, and indeed must be quite bad. As a matter of fact, the original panel in Lamb did this very thing. It set the effective date all by itself, not realizing how very little such a statement 'arises,' and so received a chastisement by the majority.
 
 
 48
 BARRETT, Circuit Judge (respectfully dissenting):
 
 
 49
 The majority opinion placed reliance upon the opinions of the Supreme Court in Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), and Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), as 'recent' decisions dealing with the issue of retroactive versus prospective application of a new constitutional rule. By implication, I interpret the reference to these cases to signify that the majority believes that the Supreme Court thereby generated a shift from rules it had previously laid down governing the subject matter. My reading of the cases does not so indicate.
 
 
 50
 In Gosa the Court specifically recognized its time-honored dominant considerations determinative of the retroactive versus prospective application of a new constitutional rule, i.e.: (1) the purpose to be served by the new rule; (2) the extent of reliance placed on the old rule; and (3) the effect on the administration of justice of the retroactive application of the new rule. The Court did in those opinions place emphasis on its concern for both basic fairness and essential justice. The difficulty I encounter, however, arises from the fact that the majority opinion recognizes--as it must--that there was no challenge in Lamb aimed at the accuracy of the truth-finding process. There could not have been such a challenge because the condemned proceedings were undertaken under Oklahoma criminal statutes whereby due process requirements were obviously much more stringent and compulsory on the State than those prevailing under Oklahoma juvenile statutes. That being so, I believe that our Lamb non-retroactive ruling was on all fours with the rule of reason. The issue in Lamb was basically one of procedural law, not substantive law.
 
 
 51
 In applying the three considerations determinative of the retroactive versus prospective application set forth in Gosa, supra, to the cases at bar, we should first observe that the sole justification advanced by the State of Oklahoma in Lamb for the age-sex disparities was that the disparity was justified against an equal protection constitutional challenge based upon unexplained 'demonstrated facts of life.' Lamb v. State, 475 P.2d 829 (Okl.Cr.1970). In our Lamb opinion we did not state that the disparity was without constitutional justification, but rather that no logical justification had been presented for our consideration. It was for that reason that the opinion volunteered that the ruling would not have retroactive application.
 
 
 52
 Those decisions whereby the courts have granted full retroactive effect to new constitutional rules involve, inter alia: (1) an accused's right to the assistance of counsel at trial, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); (2) specific procedures designed to determine the substantive voluntariness of an accused's confession, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); (3) an accused's right to confront the witnesses against him, Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); (4) an indigent's right to a free transcript on appeal, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), reh. den. 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480; and (5) the impropriety of disqualifying prospective jurors because they have certain views as to capital punishment in proceedings involving the possible imposition of such punishment, Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), reh. den. 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186. The rules announced in these and many like cases were applied retroactively because they were found to be basic deprivation of rights casting serious doubts upon the reliability of the previous judicial determinations--in other words, challenges to the accuracy of the truth-finding process under the old rule. While these decisions necessarily dealt with procedural techniques required to effectuate the new rules, each of the decisions were substantive in nature. Our volunteered non-retroactive holding in Lamb, supra, did not involve a substantive ruling.
 
 
 53
 To be sure, the issue of retroactive-prospective application was not raised by the parties in Lamb. That, however, is of no consequence. It is basic that the Federal Constitution has no voice upon the subject and that, accordingly, retroactive application of new constitutional rules is neither compelled nor prohibited thereby. Tehan v. United States, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).
 
 
 54
 In Gosa, supra, relied upon by the majority, the Court held that the three-pronged test heretofore referred to, first announced in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), required that the decision in O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), holding that a serviceman charged with a crime that is not 'service connected' is entitled to indictment by a grand jury and trial by jury in a civilian court rather than trial by court-martial, and that the ruling be accorded prospective effect only. And in the recent case of Wolff, Warden et al. v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court reversed the holding of the Court of Appeals that certain due process requirements involving prison disciplinary proceedings were to be applied retroactively. In Wolff, the Supreme Court held that the retroactivity of new procedural rules is effectively foreclosed by its holding in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 483 (1972). The Court, 418 U.S. on page 573 of its opinion, 94 S.Ct. on page 2983 said:
 
 
 55
 Despite the fact that procedures are related to the integrity of the fact-finding process, in the context of disciplinary proceedings, where less is generally at stake for an individual than at a criminal trial, great weight should be given to the significant impact a retroactivity ruling would have on the administration of all prisons in the country, and the reliance prison officials placed, in good faith, on prior law not requiring such procedures. (emphasis supplied).
 
 
 56
 The United States Supreme Court has shied away from applying constitutional rulings retroactively in criminal cases because of the unknown number of convictions which would be affected. DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). The Lamb holding, as noted, was not entered to overcome errors in the criminal trials which impaired the truth finding process and the accuracy of the guilty verdicts (Linkletter v. Walker, supra), or to guarantee a specific constitutional right. The holding involved the procedural issue of forum--not whether Lamb should have been tried but, rather, which forum (Criminal Court or Juvenile Court) should have conducted the proceedings--not whether, but where. The sole purpose was to deter further age/sex discriminations, absent constitutional justification.
 
 
 57
 In my judgment we must here recognize that Oklahoma relied upon the condemned statute re sex/age differential in all good faith for some thirty-one years without challenge. It is most inappropriate for the Court to now proceed to nullify and void all Oklahoma state convictions from 1941 to 1972 rendered under the condemned statute, involving at least some 2,173 convictions unquestionably accounted for. Furthermore, at the date of our Lamb decision there were 24 males incarcerated under the condemned act, convicted after April 4, 1972, who can overturn their convictions in reliance of the Lamb retroactive application involving, inter alia, the commission of the crimes of Rape, Manslaughter, Burglary, Larceny, and Robbery with Firearms. It is unknown whether or how many could be effectively retried. Releasing those convicted of such serious offenses against persons and property to the public 'streets' without knowledge of the ability of the State to effectively undertake the burden of other proceedings, or to seek any recourse would, in my opinion, be wholly contrary to public policy. In addition, we now know that the records involving crimes committed by at least 2,173 males prosecuted under the condemned statute relied upon by Oklahoma officials for thirty-one years will have a most serious effect on the administration of justice by application of the Lamb ruling retroactively because their records must be expunged, again effectively impeding the search for truth--that which I consider the primary objective of the criminal justice system. By comparison, the juvenile records of female offenders under the age of 18 years shall not be expunged. This, I suggest, creates a question of basic fairness. In terms of essential justice, the Oklahoma statutes--although discriminatory between the sexes in the specific age categories--were not discriminatory in terms of application on the particular class, i.e., male or female.
 
 
 58
 Our ruling here assures that males between ages 16 and 18 in the following four categories of convictions are absolutely 'home free' by reason of the retroactive application, i.e: (1) those who were convicted of felony offenses; (2) those whose convictions were the predicate for 'former convictions' under enhancement statutes; (3) those who committed misdemeanors; and (4) those whose convictions may have been used to impeach their credibility.
 
 
 59
 I believe that the following observations made by Mr. Justice Blackmun, in writing for the majority in Gosa v. Mayden, supra, are most appropriate to the case at bar.
 
 
 60
 We must necessarily consider the impact of a retroactivity holding on the interest of society when the new constitutional standard promulgated does not bring into question the accuracy of prior adjudication of guilt. Wholesale invalidation of convictions rendered years ago could well mean that convicted persons would be freed without retrial, for witnesses, particularly military ones, no longer may be readily available, memories may have faded, records may be incomplete or missing, and physical evidence may have disappeared. Society must not be made to tolerate a result of that kind when there is no significant question concerning the accuracy of the process by which judgment was rendered or, in other words, when essential justice is not involved. 413 U.S. at 685, 93 S.Ct. at 2938--2939.