David Lee GARNER, Respondent,

v.

The STATE OF OKLAHOMA, Defendant.

No. CIV–74–336–E.

United States District Court,
W. D. Oklahoma.

Aug. 15, 1975.

Opinion after Evidentiary Hearing
Sept. 8, 1975.

Fred Gilbert, Tulsa, Okl., for respondent.

Larry Derryberry, Atty. Gen., and Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl., for defendant.

MEMORANDUM AND ORDER

EUBANKS, District Judge.

This habeas proceeding is among the progeny of the decisions of the Court of Appeals in *Lamb v. Brown,* 456 F.2d 18

(CA10 1972) and *Radcliff v. Anderson,* 509 F.2d 1093 (CA10 1975). The essential facts are not disputed. In Case No. CRF–71–1518, District Court of Oklahoma County, the petitioner who was then 17 years of age and represented by an attorney of his own choice, was tried by jury and convicted of the offense of Robbery With Firearms. On January 21, 1972, he was sentenced in accordance with the verdict of the jury to 18 years imprisonment.

■ The petitioner has exhausted his state remedies on the issues presented in his pro se petition by direct appeal and appropriate proceedings under the Oklahoma Post Conviction Procedure Act. It is his primary contention that because he was tried without certification as an adult under the Oklahoma Juvenile Law his conviction is constitutionally void under *Lamb v. Brown,* supra. Essential to a proper resolution of this case is a correct understanding of what the *Lamb* decision held and the precise determination which this court must make. In *Lamb,* decided March 16, 1972, the court declared void as violative of the Equal Protection Clause of the Fourteenth Amendment, 10 O.S. § 1101(a) (1969 Supp.) enacted January 13, 1969, which provided in pertinent part:

> "The term 'child' means any male person under the age of 16 years and any female person under the age of 18 years."

*Radcliff* decided that the decision in *Lamb* should be applied retroactively. The constitutional violation to which the petitioner was subjected in the criminal proceedings culminating in his conviction was the denial of benefits under the Oklahoma statutes pertaining to juveniles which were available to females of the same age. He had no constitutional right as such to be treated as a juvenile. *Smith v. Yeager,* 459 F.2d 124 (CA3 1972). He did have a constitutional right under the Fourteenth Amendment to equal treatment. These benefits which were impermissibly denied to him include, as pointed out in *Radcliff,* "form of petition (§ 1103), custody (§ 1104), release to parents (§ 1107), temporary detention (§ 1108), conduct of hearings, including a provision for

privacy (§ 1111), and discretionary certification for adult proceedings after a preliminary hearing (§ 1112(b))". 509 F.2d at 1095. *Lamb* did not hold the conviction of the petitioner therein void. Neither *Lamb* nor *Radcliff* mandate that every 16 or 17 year old male convicted as an adult prior to March 16, 1972, is now entitled to an automatic reversal of his conviction. The task of this court is to determine the effect upon this petitioner's conviction of the discriminatory procedural deprivations which he suffered.

The respondents would remove this burden from this court's shoulders by the simple expedient of categorizing the problem as a matter of interpretation of State law concerning which the Oklahoma courts have already made an interpretation binding on the federal courts. It is submitted that in a series of decisions, *Schaffer v. Green,* Okl. Cr., 496 P.2d 375 (1972); *Freshour v. Turner,* Okl.Cr., 496 P.2d 389 (1972); *Dean v. Crisp,* Okl.Cr.1975, 536 P.2d 961 the Oklahoma Court of Criminal Appeals construed the state law in light of the invalid sex classification found by the *Lamb* court and determined that no juvenile proceedings were required for any person, male or female, over the age of 16 prior to April 4, 1972, when 10 O.S.1971 § 1101 was amended to define "child" to mean any person under the age of 18. The effect of this conclusion, in the view of the Oklahoma courts, is to validate any conviction between 1941, when the first discriminatory statute was passed and the latter date, where the defendant was over the age of 16 at the time of his conviction.

This court, of course, agrees that it was a proper function of the Oklahoma courts to determine *the effect on Oklahoma law* of the unconstitutionality of the definition of "child" declared in *Lamb.* See *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975). It is the proper function of this court to determine *the effect on this petitioner's conviction* of the discriminatory treatment which he received as a result of the unconstitutional Oklahoma law. It was certainly within the preroga-

tives of the Oklahoma courts to find that the petitioners in *Schaffer* and *Freshour, who had not then been tried,* were not entitled to certification proceedings before being tried as adults. That determination was purely a matter of interpretation of State law and such interpretation as modified by *Dean* would be binding upon this court as to all persons tried subsequent to March 16, 1972. The dicta in *Freshour* and *Turner* and the holding in *Dean* which purports to sanctify all convictions back to 1941 are, however, not ultimately binding on the federal courts. For those convictions the relevant question is not what was the Oklahoma law which should have applied at the time of those criminal proceedings. We know the law that *was* applied. That law, it is now conceded, was discriminatory. It makes no difference that the Oklahoma court can now say with wisdom born of hindsight, that 17 year old girls received more favorable treatment than they were entitled to under constitutionally valid Oklahoma law. The fact is, and it is undeniable, that at the time of petitioner's conviction Oklahoma did accord to girls the favored treatment. This petitioner was discriminated against by the State. There was a denial by the State of equal protection to the petitioner, and the taint of discrimination is not removed from the conviction by the retrospective view that he received all the protection he was entitled to under a proper interpretation of constitutionally sound Oklahoma law. The fallacy of such view lies in its disregard of the federal constitutional reality. He was entitled to equal protection. He was entitled to the same treatment as the favored class. In short, it was the treatment that he received which flaws the proceedings. That discriminatory treatment is now a matter of fact and not a question of law. We cannot blink the constitutional violation by observing that the Oklahoma Legislature passed in 1931 a law which, *if it had been followed,* would have accorded equal treatment to the petitioner. We deal here with a specific constitutionally infirm conviction, and not with the theoretical status of Oklahoma law on the date of the conviction.

The petitioner, while correctly arguing that federal law controls the determination of federal constitutional rights, nevertheless would have the consequences of that violation determined by Oklahoma law. He asserts that under Oklahoma law "adult" convictions of persons who should have received certification hearings are void. We reject this argument also. *Lamb* determined the constitutional error. This court must fashion the proper treatment for the error. Both the determination and the treatment of federal constitutional errors are governed by federal law and not state law. As stated in *Chapman v. California,* 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967):

"   .   .   . [T]he error from which these petitioners suffered was a denial of rights guaranteed against invasion by the Fifth and Fourteenth Amendments, rights, rooted in the Bill of Rights, offered and championed in the Congress by James Madison, who told the Congress that the 'independent' federal courts would be the 'guardians of those rights.' Whether a conviction for crime should stand when a state has failed to accord federal constitutionally guaranteed rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied."

The court therein made clear that not every constitutional error fatally taints the conviction.

We proceed therefore on the premise that the petitioner is entitled to relief only if under all the facts and circumstances he has been harmed by the failure to extend to him the benefits that a female of the same age would have received. In this approach we begin with the statement in *Radcliff* :

"We have here no question of the accuracy of the fact-finding process. We assume that the adult proceedings to which these boys were subjected resulted in the determination of the truth." 509 F.2d at 1095.

Simply because the Court of Appeals held *Lamb* retroactive it is not a necessary consequence that persons whose convictions were affected by the ruling must be freed. *Mordecai v. United States*, 137 U.S.App. D.C. 198, 421 F.2d 1133 (1969). In *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) the 21 year old petitioner had been denied a hearing prior to adult proceedings while he was age 16. The Supreme Court found a denial of due process but refused to vacate the conviction and dismiss the indictment stating "[W]e do not consider it appropriate to grant this drastic relief." 383 U.S. at 565, 86 S.Ct. at 1059. Rather it remanded the case to the district court for a hearing de novo to determine nunc pro tunc the propriety of waiving juvenile court jurisdiction. "If that court finds that waiver was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the district court may proceed after consideration of such motions as counsel may make and such further proceedings, if any, as may be warranted, to enter an appropriate judgment." 383 U.S. at 565, 86 S.Ct. at 1059.

*Woodall v. Pettibone*, 465 F.2d 49 (CA4 1972), cert. denied, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 declared retroactive the Fourth Circuit's decision holding unconstitutional upon the ground of denial of equal protection certain Maryland statutes permitting different treatment of juveniles in specified geographical areas. It was cited favorably by the Tenth Circuit in concluding that the *Lamb* decision should be applied retroactively. The relief prescribed in the *Woodall* opinion for those entitled to the retroactive rule was to afford the state the opportunity to establish nunc pro tunc the state juvenile court judge would have, because of the circumstances, waived jurisdiction to an adult court. See also *Kemplen v. State of Maryland*, 428 F.2d 169 (CA4 1970). The reason and purpose of such an inquiry was set forth in *Brown v. Cox*, 481 F.2d 622, 627 (CA4 1973):

"Fundamental fairness, though, demands that the public's right to retry the petitioner as an adult for a crime committed while he was a juvenile and subject to the processes of the juvenile court's system, be conditioned upon a judicial determination of some kind that the petitioner has not been improperly prejudiced by the loss of the opportunity, in a properly conducted hearing, to have opposed a transfer from the juvenile court in 1963. Beyond question the petitioner would have been so prejudiced if at such hearing it would have been likely transfer would have been refused. Such a refusal would have meant that in no event could the petitioner have been subjected to any form of restraint beyond his 21st year. Only if it could be fairly said that such a transfer would have been made, had a hearing carried out with constitutional safeguards been had, would it be proper to try the petitioner as an adult."

See also *Black v. United States*, 122 U.S. App.D.C. 393, 355 F.2d 104 (1965).

In another decision involving the treatment of retroactively established procedural infirmities in "adult" convictions of persons within the age of juvenility the Ninth Circuit adopted a similar remedy:

"In fashioning a remedy to vindicate Powell's constitutional rights we are aware that hindsight is a poor substitute for the proper hearing which should have been conducted in 1966. A new hearing should be held to determine whether, at the time, Powell was appropriate for treatment as a juvenile or as an adult. If it is decided that certification to the adult criminal court was not appropriate, then Powell must be released from detention. He is now past the age of majority, which limits the time that juvenile rehabilitation may be ordered." *Powell v. Hocker*, 453 F.2d 652, 656 (CA9 1971).

We are aware of no decision by any federal courts of appeal holding that the retroactive recognition of procedural defects in such "adult" convictions entitles the person to immediate release. The remedy of a de novo hearing to determine a question nunc pro tunc is one which has been frequently utilized by federal appellate courts. *Broad-*

*way v. Beto,* 338 F.Supp. 827, n. 12 at p. 832 (N.D.Tex.1971).

We conclude therefore that it is both proper and necessary for the court in this case to conduct a hearing to determine if the petitioner was improperly prejudiced by the failure of the court to accord to him the same benefits which a 17 year old female would have received in like circumstances. If the court is satisfied to a moral and legal certainty that no judge under all the facts which may be developed would have denied certification as an adult and that otherwise there are no infirmities which would have affected the ultimate result in petitioner's case, then his adult conviction will stand and relief will be denied. If, however, for any reason the court entertains a reasonable doubt that certification would have been granted or the adult conviction obtained, then the conviction must be vacated and after consideration of such motions as counsel may make, and such further proceedings, if any, as may be warranted, the court will enter an appropriate judgment.

■ The petitioner in his original petition also attacked his conviction on the ground:

"I was denied counsel at preliminary arragment [sic]. Also due process."

This complaint is wholly without merit. Under Oklahoma procedure, the accused upon his arrest, must be taken before a magistrate. 22 O.S.A. § 176. This must be accomplished without unnecessary delay. 22 O.S.A. § 181. At that time it is provided:

"*Magistrate must inform defendant of charge and rights.*—When the defendant is brought before a magistrate upon an arrest, either with or without a warrant, on a charge of having committed a public offense, the magistrate, must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings, and also of his right to waive an examination before any further proceedings are had." 22 O.S.A. § 251.

At the initial appearance or "preliminary arraignment" before the magistrate the accused is not required to plead. The accused is entitled to a preliminary examination or hearing, and if this is not waived, the court must adjourn until counsel is secured. 22 O.S.A. § 252. The accused is not required at his initial appearance before the magistrate to assert any defenses, and therefore, none may be "irretrievably lost." It is not under Oklahoma law a critical stage in the proceedings against him. Cf. *Hamilton v. Alabama,* 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). The arraignment proper occurs in the district court after the initial appearance and preliminary hearing have been held and an information or indictment has been filed. 22 O.S.A. § 451. The record is quite clear that counsel was provided at this arraignment. The petitioner was not entitled to an attorney at his initial appearance.

■ The petitioner in his pro se petition also incorporated the proposition which was the basis of his direct appeal:

"I was convicted on accomplice testimony which was not corroborated by any legally admissible evidence."

It is well established that the sufficiency of the evidence to support a state conviction raises no federal constitutional question and cannot be considered in federal habeas proceeding by state prisoners. *Sinclair v. Turner,* 447 F.2d 1158 (CA10 1971). There is no federal constitutional requirement that the testimony of an accomplice be corroborated. *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *United States v. De Larosa,* 450 F.2d 1057 (CA3 1971), cert. denied, *Baskin v. United States,* 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800, cert. denied *Noel v. United States,* 405 U.S. 957, 92 S.Ct. 1188, 31 L.Ed.2d 235 cert. denied, *Jones v. United States,* 405 U.S. 957, 92 S.Ct. 1189, 31 L.Ed.2d 236.

■ The fundamental question presented, however, in this somewhat circuitous manner is whether the confession of the petitioner which was received in evidence was constitutionally invalid. At the trial the defense moved to suppress the confession. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) requires

judicial rulings on voluntariness prior to admitting the confession. The trial court complied. Out of hearing of the jury it received testimony from the defendant concerning the circumstances which he contended rendered his confession involuntary. The petitioner testified that he was 17 years old and dropped out of school in the tenth grade. On Sunday his father accompanied him to the police station where he was given the *Miranda* warnings and interrogated in the presence of his father. The petitioner then denied that he committed the robbery. He was permitted to go after agreeing to come back the next day. On Monday he came back alone and told the officers he wanted to take a lie-detector test but later declined to do so. According to him the officers did not again advise him of his rights before he gave the challenged statement. He acknowledged that when he was advised of his rights on Sunday he did understand them and that "I knew what he was talking about." The trial court overruled the motion to suppress. The interrogating officer prior to relating petitioner's statement testified of his first meeting with petitioner at the police station in the presence of his father. He first gave the *Miranda* advice and both the petitioner and his father acknowledged that they understood these rights. Petitioner told him that he knew nothing concerning the robberies about which they were questioning him. The petitioner was told to return the next day. Upon his arrival he was arrested and again given the full statement of his rights under *Miranda*. The petitioner then subsequently admitted his participation in the robbery.

The hearing afforded by the trial judge satisfies fully the requirements of 28 U.S.C.A. § 2254 and his findings are presumed to be correct. The petitioner does not claim that this hearing did not meet the rule of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) or challenge it on any of the grounds set forth in 28 U.S.C.A. § 2254(d) and (e). After independent review of the trial transcript the court finds that there is factual and legal support for the ruling of the trial court and certainly cannot conclude that there was a violation of petitioner's federal constitutional privilege against self-incrimination. Therefore, this court is not required to hold an evidentiary hearing on this issue. See *Maxwell v. Turner,* 411 F.2d 805 (CA10 1969).

■ The petitioner's private attorney, who has only recently entered the case, in his Reply to the State's Supplemental Response had injected a new issue concerning the confession. He does not argue the voluntariness of the confession but raises for the first time in any court an equal protection claim. He asserts:

"At pp. 1341–1342 it appears that the Petitioner, a male then 17 years of age, made some sort of an incriminatory statement after proper *Miranda* warnings, etc. etc., but nevertheless *in the absence of parent, guardian or counsel*!

The significance of this latter fact is that had the Petitioner been a female, and hence a 'child' under the 10 O.S.1971, 1101(a), all the *Miranda* warnings in the world could not, under *Oklahoma* law, have rendered admissible his confession given in the absence of parent, guardian, or counsel:

'No information gained by questioning a child shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency . . . *is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child* . . .'

10 O.S.1971, Sec. 1109(a)! (Emphasis added)."

Never on direct appeal or in his state post conviction proceeding did the petitioner suggest that the admission of his confession was an act of discrimination against him. The sole equal protection contention in his post conviction proceeding was directed to the absence of any certification as an adult prior to his trial.

We note that the definition of "child" contained in 10 O.S. § 1101(a) (Supp.1969) declared invalid in *Lamb* was replaced on

the statute books in 1970 by a new non-discriminatory definition of "child" in 10 O.S. § 1101A (Supp.1970) so that *Lamb* is not necessarily determinative of the application and effect of § 1109 at the time of petitioner's trial in 1972. The question is one which the Oklahoma courts have not had an opportunity to consider. Exhaustion requires that state courts be afforded the opportunity to consider and resolve claims of constitutional infirmity before raising these claims in federal court. 28 U.S.C.A. § 2254 and *Hoggatt v. Page*, 432 F.2d 41 (CA10 1970). It is not sufficient that the federal habeas applicant has been through the state courts but the "federal claim must be fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). In the latter case the court found no exhaustion on an equal protection theory which had not been presented to the state courts in that particular focus. In *Gurule v. Turner*, 461 F.2d 1083 (CA10 1972) the petitioner had challenged the voluntariness of his confession in the state courts on one basis but in the federal court urged another basis and the court concluded:

> "Therefore, with regard to. this new theory and facts the petitioner has failed to exhaust his state remedies. His petition insofar as it relates to such claims, must be dismissed without prejudice to give the state court an opportunity to pass on these claims, should they be presented by appellee in further state proceedings." 461 F.2d at 1084.

The petitioner has not therefore exhausted his state remedies on the new theory propounded by counsel. To paraphrase the court in *Picard v. Connor*, 404 U.S. at 278, 92 S.Ct. at 513:

> "The claim that a confession is involuntary is not the substantial equivalent of a claim that its use results in an unconstitutional discrimination."

As evidenced by the foregoing analysis it is only petitioner's primary contention which requires an evidentiary hearing in this court. Accordingly, a hearing is set on the 27th day of August, 1975, at 9:30 a.m. in

Courtroom No. 3, United States Courthouse, Oklahoma City, Oklahoma before the undersigned District Judge to consider the actual prejudice, if any, which petitioner may have suffered by reason of the failure to accord to him in his criminal proceedings the same treatment as females in like circumstances would have received.

IT IS SO ORDERED.

### OPINION AFTER EVIDENTIARY HEARING

■ On the 29th day of August, 1975, this cause came on for evidentiary hearing. Petitioner appeared in person and with his private attorney, Fred Gilbert. Kay Karen Kennedy, Assistant Attorney General for the State of Oklahoma, appeared for the respondent. Pursuant to this Court's *Memorandum and Order* issued on August 15, 1975, said evidentiary hearing was conducted to determine if the petitioner was improperly prejudiced by the failure of the state court to accord to him the same benefits which a 17 year old female would have received in like circumstances.

On the evidence presented to the Court, the following findings of fact, are made herein:

1. Petitioner's date of birth was May 25, 1954.

2. Petitioner was 17 years of age when the crime, as charged in CRF-71-1518, was committed.

3. At the age of 15 years, petitioner was referred to the Juvenile Division of the Oklahoma County District Court. After a hearing by that court, petitioner was adjudicated a juvenile delinquent. Petitioner was placed on probation from August, 1969 to January, 1970. Due to further criminal misconduct, petitioner was incarcerated in a state training school.

4. On January 22, 1971, petitioner pled guilty to the criminal charge of Forgery in the Second Degree. Petitioner, then 16 years of age, was given a deferred sentence. The deferred sentence was accelerated on February 21, 1972; plaintiff received a two year sentence.

5. In January, 1972, petitioner was tried on the charge of Robbery with Firearms in Case No. CRF–71–1518. Petitioner was convicted and sentenced to a term of 18 years imprisonment.

6. Concurrent to the charge filed in CRF–71–1518, petitioner was charged in Cases No. CRF–71–1515 and CRF–71–1520 with the crime of Robbery with Firearms. Subsequent to the conviction in case No. CRF–71–1518, petitioner entered pleas of guilty in CRF–71–1515 and CRF–71–1520 to the included offense of Concealing Stolen Property. Petitioner received two two year terms of imprisonment, the sentences to run concurrently.

7. The only testimony petitioner gave at the evidentiary hearing was his name and date of birth. Upon the advice of his attorney, petitioner refused to answer questions and stated that he wished to invoke his Fifth Amendment rights. Petitioner failed to offer any evidence which would have established that he was improperly prejudiced by the failure to be certified as an adult. Petitioner also failed to show that he had been harmed by the failure of the State to extend to him the benefits that a female the same age would have received. Therefore, petitioner's evidence fell far short of a showing that he was entitled to release from custody.

8. After a careful review of the facts and circumstances of this case, this Court has no difficulty in finding to a moral and legal certainty that no Juvenile Court, on the record in this case, would have denied transfer. The petitioner, in proceedings before the Juvenile Court conducted prior to the filing of the 1970 charge, had been adjudicated a juvenile delinquent and incarcerated in a detention home. Petitioner was afforded several opportunities to take advantage of the rehabilitative programs afforded juvenile offenders. However, petitioner, with full knowledge of the consequences of his acts, continued to violate the penal laws of the State of Oklahoma.

9. This Court concludes that such circumstances made transfer inevitable when petitioner was subsequently charged with Robbery with Firearms. The gravity of the offense was such that it would be unreasonable to assume that any court would have denied transfer. It should also be noted that the crime was not an isolated incident, but one of several similar crimes committed by the petitioner.

10. Based upon the record in this case, the Court finds that there is no reasonable doubt that certification would have been granted and the adult conviction obtained.

THEREFORE, IT IS BY THE COURT ORDERED THAT petitioner's writ of habeas corpus be denied.