EBEL, Circuit Judge.
 

 Petitioner appeals from a district court order dismissing his 28 U.S.C. § 2254 petition as an abuse of the writ under Rule 9(b) of the Rules Governing § 2254 Cases.
 
 [1]
 
 We review the district court’s factual findings for clear error and its legal conclusions de novo.
 
 See Thomas v. Kerby,
 
 44 F.3d 884, 886 (10th Cir.1995). For the reasons explained below, we affirm the district court’s disposition with respect to the first six of seven grounds for relief asserted in the petition, but reverse as to the last, and remand for appropriate relief.
 
 [2]
 

 I
 

 In 1971, petitioner, then sixteen years old, was prosecuted in Oklahoma as an adult, convicted, and ultimately sentenced to over fifty-five years’ incarceration for grand larceny, possession of a firearm after former conviction of a felony (AFCF), concealment of stolen property AFCF, and robbery with a firearm AFCF. He filed his first federal habeas petition challenging one of these convictions in October 1977. That petition, which was denied on the merits, did not include any of the grounds asserted herein. Two more § 2254 petitions followed, though these were disposed of on procedural grounds prior to any consideration of the merits.
 

 In the meantime, petitioner pursued a state post-conviction claim that his adult prosecution without a prior certification hearing authorizing such a procedure — contrary to how female juveniles were treated — violated the equal protection principles enunciated in
 
 Lamb v. Brown,
 
 456 F.2d 18 (10th Cir. 1972), and retroactively applied in
 
 Radcliff v. Anderson,
 
 509 F.2d 1093 (10th Cir.1974),
 
 cert. denied,
 
 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975). Given the undeniable constitutional violation asserted, the state granted petitioner a retroactive adult certification hearing (RAC hearing) to determine whether he would have been certified for prosecution as an adult had proper procedures been followed back in 1971, which is the remedy recognized for
 
 Lamb
 
 violations by this court in
 
 Bromley v. Crisp,
 
 561 F.2d 1351 (10th Cir.1977),
 
 cert. denied,
 
 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978), and thereafter elaborated upon by the Oklahoma Court of Criminal Appeals in
 
 Edwards v. State,
 
 591 P.2d 313 (Okla.Crim.App.1979).
 

 Four months prior to his RAC hearing, petitioner requested the assistance of appointed counsel. That request was not ruled on until the day of the hearing, when it was denied “because post-conviction proceedings are in the nature of civil relief and Petitioner, therefore, is not entitled, by right, to appointment of counsel.” App. X-18, at 1.
 
 See generally Edwards,
 
 591 P.2d at 321-23 & n. 22 (indicating RAC hearing to be held “in accordance with 22 O.S.1971 § 1084,” which pertains to state post-conviction proceedings in which appointment of counsel is matter of judicial judgment under Okla.Stat. tit. 22, § 1082). Petitioner then refused to participate in the hearing, complaining that he had not been given sufficient preparation time to defend his interests. The court proceeded to hear the state’s evidence, though it granted petitioner the opportunity to expand the record post-hearing, which he did not do. Ultimately, the court concluded petitioner would
 
 *958
 
 have been certified as an adult had a proper hearing been held prior to his prosecution in 1971.
 

 That brings us to the present habeas petition, which lists seven grounds for relief, all relating to petitioner’s 1971 convictions. These include: three claims of ineffective assistance of appellate counsel, two claims that the Oklahoma Court of Criminal Appeals acted to deprive petitioner of the effective assistance of appellate counsel, one claim that the Oklahoma Court of Criminal Appeals subjected petitioner to unconstitutional appellate delay by never explicitly addressing arguments he made in a pro se appellate brief, and, finally, the claim that petitioner’s convictions are unconstitutional under
 
 Lamb
 
 (and that he was not accorded due process in connection with the RAC hearing held to remedy this violation). On the magistrate judge’s recommendation, the district court concluded these matters could have been, or were, raised in an earlier petition, and dismissed all claims under Rule 9(b).
 

 II
 

 We concur in the district court’s disposition of petitioner’s first six grounds for relief, all of which were available yet omitted from petitioner’s first habeas petition in 1977.
 
 See McCleskey v. Zant,
 
 499 U.S. 467, 498, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991) (Rule 9(b) prohibition applies to new claims raised in later habeas petitions if “petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege [such] elaim[s] in the first petition”). Petitioner attempts to establish the cause and prejudice necessary to excuse this default,
 
 see id.
 
 at 493-97, 111 S.Ct. at 1469-72, by insisting that prison officials have impeded his access to the courts. However, his general allegations in this regard do not even focus on the pertinent (1977-78) period, let alone show any particularized prejudicial impact on his ability to prepare and pursue his first petition at that time.
 

 The situation is quite different, and more complicated, with respect to petitioner’s claim regarding the constitutional inadequacy of his 1982 RAC hearing. Obviously, such a claim was not available for inclusion in the first petition.
 
 [3]
 
 Consequently, Rule 9(b) as traditionally articulated would not bar present consideration of that claim.
 
 See McCleskey,
 
 499 U.S. at 498, 111 S.Ct. at 1472;
 
 see, e.g., Worthen v. Kaiser,
 
 952 F.2d 1266, 1268 (10th Cir.1992) (Rule 9(b) prohibition may be avoided by petitioner’s “demonstration of the unavailability of a factual or legal basis” for claim at time of earlier petition). Indeed, a number of decisions have stated specifically that when a constitutional claim arises out of state proceedings held after the disposition of a federal habeas petition, a subsequent petition may raise the claim without running afoul of Rule 9(b).
 
 See Otey v. Hopkins,
 
 972 F.2d 210, 212 (8th Cir.1992);
 
 Byrd v. Martin,
 
 754 F.2d 963, 965 (11th Cir.1985);
 
 see also Richmond v. Ricketts,
 
 774 F.2d 957, 961 (9th Cir.1985).
 

 That said, we recognize that this case presents a unique factual/procedural twist which the traditional case-law formulation of the Rule 9(b) bar simply does not contemplate. Although the constitutional sufficiency of petitioner’s 1982 RAC hearing obviously was not an issue available in 1977, the RAC hearing was itself the remedy for a constitutional claim that, in light of our earlier decisions in
 
 Lamb
 
 and
 
 Radcliff,
 
 could have been pursued at that time. Because petitioner omitted this claim from his first habeas petition, any attempt thereafter to challenge his improper transfer from Juvenile Court — and his resultant adult convictions — by way of habeas would implicate the Rule 9(b) bar. It may seem somewhat incongruous, then, to hold that petitioner can now challenge the consti
 
 *959
 
 tutional sufficiency of the RAC hearing he had lost the right to demand (at least in the federal courts) in the first place.
 

 What underlies this misgiving is the tacit assumption of a kind of fruit-of-the-abandoned-tree principle, i.e., the idea that the omission of an available constitutional claim from a habeas petition should bar later consideration not only of that claim but of any subsequent constitutional violation that would not have arisen but for the state’s attempt to remedy the initial, federally-waived claim. This principle has undeniable facial appeal. Nevertheless, it is ultimately unacceptable for several interrelated reasons.
 

 First, as already noted, the conventional case-law formulation of the Rule 9(b) prohibition specifically applies only to claims that were available when an earlier petition was pursued. Thus, application of Rule 9(b) to the kind of consequential-deprivation claim outlined here would necessarily require an extension of the rule’s traditional scope. Second, the parties have not cited, nor have we found, any cases adopting or even considering such an extension of the rule. While precedent necessarily cannot be a prerequisite for the adoption of a new approach, the absence of extant authoritative support should nevertheless place more of a burden on the approach to justify itself through other means. This prompts our third and decisive point, which involves an assessment of the logical consequences of extending Rule 9(b) with the suggested principle. These consequences are clearly untenable.
 

 For example, with respect to the present ease, because of petitioner’s resort to state court to obtain his constitutionally mandated RAC hearing, petitioner effectively would have
 
 no federally enforceable constitutional rights
 
 in that hearing. As alleged here, the state could deny him adequate notice, counsel, and a meaningful opportunity to prepare and defend his interests, and Rule 9(b) would preclude him from challenging the result in federal court. This is quite different from merely holding that someone has waived federal relief as to past wrongs that, for whatever reasons, he initially chose not to challenge; petitioner would have the unprecedented status of a constitutional orphan, denied protection against
 
 yet unknown and unincurred
 
 deprivations.
 

 Indeed, suppose a state defendant similarly omitted, without excuse, an available claim of constitutional error from an unsuccessful habeas petition and thereafter obtained a reversal of his conviction in state post-conviction proceedings on the basis of that claim. Under the principle suggested above, this defendant would also be stripped of federally enforceable constitutional protections in his subsequent retrial by the state. The prosecution could comment on his post-arrest silence and failure to take the stand, or the state could deny him a right of direct appeal, and Rule 9(b) would bar any federal attempt to redress such constitutional wrongs (which, though quite serious, would not involve the factual innocence necessary to implicate the “fundamental miscarriage of justice” exception,
 
 see generally Sawyer v. Whitley,
 
 — U.S. -, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). Again, such a result would be a patent anomaly in the modem law of habeas corpus.
 

 In short, the application of Rule 9(b) to petitioner’s seventh claim for relief requires an extension of the rule that is unsupported by authority and undercut by its own, very problematic implications. Moreover, as explained below, in confining the rule to its traditional scope, even under the unusual circumstances of this case, we remain entirely faithful to its underlying policy of discouraging tactical retention and piecemeal presentation of habeas claims.
 

 It might be suggested that petitioner should have waited to file his first habeas petition until after he had sought relief for his
 
 Lamb
 
 claim in state court
 
 and after
 
 his RAC hearing had been held, and then added his complaints about the conduct of the hearing to the petition. We would agree with respect to the
 
 Lamb
 
 claim, but draw a distinction between that claim and any constitutional violation arising out of the ensuing RAC hearing. Certainly, petitioner should have waited until his
 
 Lamb
 
 claim had been resolved by the state courts before coming to federal court, and, because of his failure to do so, if the state courts had denied relief thereon, he would have been barred from
 
 *960
 
 seeking the same in federal court.
 
 But,
 
 it is critical here to recognize that the
 
 Lamb
 
 violation (gender-discriminatory adult prosecution) and the due process issue petitioner now asserts (primarily, lack of counsel at the RAC hearing) are two completely — temporally and substantively — separate claims.
 
 [4]
 

 The
 
 Lamb
 
 claim was
 
 resolved
 
 when the state courts acknowledged the constitutional violation and granted petitioner an RAC hearing (just as a claim of constitutional trial error is resolved when a retrial is ordered). Thus, notwithstanding the state’s apparent contrary understanding, the subsequent RAC hearing was not, properly speaking, a continuation of the post-conviction proceeding to determine the merits of the
 
 Lamb
 
 claim, but the
 
 constitutional remedy
 
 for a
 
 Lamb
 
 violation
 
 already found.
 

 [5]
 

 See Kelley v. Kaiser,
 
 992 F.2d 1509, 1515 (10th Cir.1993) (referring to RAC hearing as “the remedy for the ... unconstitutional conviction” resulting from “unconstitutional distinction between the treatment of males and females” condemned in
 
 Lamb,
 
 and as “the appropriate remedy for a denial of equal protection”);
 
 Bromley v. Crisp,
 
 561 F.2d at 1356 (in recognizing validity of RAC procedure, court acknowledged it was “fashioning a remedy” for
 
 Lamb
 
 violation in lieu of immediate release sought by the petitioner). While petitioner could be faulted for omitting the
 
 Lamb
 
 claim from his first federal petition, and penalized under Rule 9(b) if he tried to include it in a later petition,
 
 that claim
 
 was disposed of — leaving petitioner in precisely the same position he would have been in had the federal courts remedied the claim, i.e., entitled to an RAC hearing. We are not aware of any case in which a convicted prisoner has been required to delay a habeas petition in order to await new wrongs in future proceedings.
 

 Accordingly, we hold Rule 9(b) does not apply to petitioner’s claim that the state violated his due process rights in connection with his RAC hearing. We turn, then, to consideration of this issue on the merits.
 

 Ill
 

 “It is clear beyond dispute that the waiver of [Juvenile Court] jurisdiction [to permit criminal prosecution as an adult] is a ‘critically important’ action determining vitally important statutory rights of the juvenile.”
 
 Kent v. United States,
 
 383 U.S. 541, 556, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84 (1966). Consistent with the serious nature of the proceeding, the Supreme Court has held that an adult certification hearing “must measure up to the essentials of due process and fair treatment,” including representation by counsel, meaningful access to pertinent information considered by the Juvenile Court, and an adequate statement of reasons for the court’s decision.
 
 Id.
 
 at 560-63, 86 S.Ct. at 1056-58;
 
 see also In re Gault,
 
 387 U.S. 1, 30-31, 36, 87 S.Ct. 1428, 1445-46, 1448, 18 L.Ed.2d 527 (1967). Indeed, the Court stressed that “there is no place in our system of law for reaching a result of such tremendous consequences without ceremony — without hearing, without effective assistance of counsel, without a statement of reasons.”
 
 Kent,
 
 383 U.S. at 554, 86 S.Ct. at 1053-54.
 

 The courts of Oklahoma, which deem “a certification hearing in Juvenile Court [to be] ‘comparable in seriousness to a felony prosecution,’ ”
 
 J.T.P. v. State,
 
 544 P.2d 1270, 1275 (Okla.Crim.App.1975) (quoting
 
 Bruner v. Myers,
 
 532 P.2d 458, 461 (Okla.Crim.App.1975)), strictly adhere to the constitutional precepts announced in
 
 Kent
 
 with respect to adult certification hearings,
 
 see, e.g., id.
 
 at 1275-76;
 
 C.P. v. State,
 
 562 P.2d 939, 942-43 (Okla.Crim.App.1977). Nevertheless, as we noted earlier, when, as in petitioner’s case, such a hearing has been denied or improperly conducted and an RAC hearing ordered to remedy that violation
 
 *961
 
 pursuant to
 
 Bromley/Edwards,
 
 the latter hearing is treated as a post-conviction evi-dentiary proceeding under Okla.Stat. tit. 22, § 1084,
 
 see Edwards,
 
 591 P.2d at 321-28 & n. 22, in which the appointment of counsel is a matter of privilege, rather than right, under Okla.Stat. tit. 22, § 1082.
 
 [6]
 

 See also Coleman v. Thompson,
 
 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (counsel not constitutionally required in post-conviction proceedings). We have not found a single published decision in which this divergen-cy has been noticed, let alone expressly considered. Upon careful deliberation, we conclude that the due process rights guaranteed in adult certification hearings cannot be denied those who, through the unconstitutional conduct of the state, must accept an RAC hearing in replacement thereof.
 

 We have already seen that an RAC hearing is not a proceeding to adjudicate the merits of a constitutional claim, but the remedy for an equal protection violation (gender-discriminatory adult prosecution) already established.
 
 See Kelley,
 
 992 F.2d at 1515. Moreover, as the most appropriate habeas remedy for an unauthorized adult prosecution (in lieu of vacate of the conviction) — in which the waiver of Juvenile Court jurisdiction is actually redetermined,
 
 see Kent,
 
 383 U.S. at 564-65, 86 S.Ct. at 1058-59;
 
 Kelley,
 
 992 F.2d at 1512 (RAC hearing procedure derived from
 
 Kent)
 
 — the RAC hearing clearly serves as a substitute for the adult certification hearing originally denied or improperly conducted. Accordingly, the constitutional process required in an adult certification hearing must be afforded in its remedial RAC counterpart as well.
 
 [7]
 

 Once again, a contrary characterization of the RAC hearing would lead to absurd consequences. For example, suppose a minor defendant had been denied representation in an adult certification hearing and the state was ordered to provide an RAC hearing to remedy the violation. If the RAC hearing were deemed a post-conviction proceeding, counsel could again (this time, properly) be denied. Thus, the remedy for the unconstitutional denial of counsel at the adult certification hearing would be yet another uncounselled hearing on adult certification. Such a result is clearly unacceptable.
 
 Cf. Kelley,
 
 992 F.2d at 1515 (“[T]he state can not as part of the remedy for the resulting unconstitutional conviction reincorpórate [the very constitutional deficiency undermining the conviction.]”).
 

 IV
 

 Accordingly, we hold that the state deprived petitioner of process constitutionally required in his RAC hearing. Under the circumstances, we consider it appropriate to require the state to hold another RAC hearing, this time ensuring that the strictures of due process are observed. The district court is thus directed to issue a conditional writ, ordering vacatur of petitioner’s pertinent convictions unless the state promptly holds a constitutionally adequate RAC hearing
 
 and
 
 validly concludes that petitioner would have been prosecuted as an adult had proper, timely certification procedures been employed.
 
 [8]
 

 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part and REVERSED in part. The cause is REMANDED with directions to issue a conditional writ of habeas corpus consistent with this opinion.
 

 [1]
 

 . Rule 9(b) applies to § 2254 petitions “filed on or after February 1, 1977.” Pub.L. No. 94-426, § 1, 90 Stat. 1334 (1976). The rule states:
 

 A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.
 

 Rule 9(b).
 

 [2]
 

 . After examining the briefs and appellate record, this panel has determined unanimously to grant the parties’ request for a decision on the briefs without oral argument.
 
 See
 
 Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 

 [3]
 

 . The district court also noted this issue had been asserted in petitioner’s second and third habeas petitions. However, because, these petitions were not decided on the merits, they do not affect the analysis under Rule 9(b). As this court recently explained:
 

 [A] habeas petition may be dismissed under the plain terms of Rule 9(b) ... only if it (1) "successively” repeats claims previously decided on the merits, or (2) "abusively” asserts new grounds unjustifiably omitted from a prior petition. Consequently, if a habeas petition reasserts a claim that was previously raised (negating the second condition) but never decided on the merits (negating the first), it is neither successive nor abusive and, thus, absent some other procedural deficiency, should be addressed on the merits.
 

 Watkins v. Champion,
 
 39 F.3d 273, 275 (10th Cir.1994) (citation omitted).
 

 [4]
 

 . As our discussion in part III reflects, this same basic distinction is essential as well to our analysis of the merits of petitioner's due process claim. Accordingly, further support for the above analysis, albeit more directly pertinent to merits issues, can be found in part III.
 

 [5]
 

 . The proper characterization of the constitutional remedy for a
 
 Lamb
 
 violation is a question of federal law and, therefore, is ultimately a matter for this court, not the courts of Oklahoma, to determine.
 
 Cf. Bromley,
 
 561 F.2d at 1354-55 (noting retroactive effect of
 
 Lamb
 
 is federal question this court must decide for itself, notwithstanding differing views expressed by Oklahoma courts on same question);
 
 Johnson v. Cowley,
 
 40 F.3d 341, 344 (10th Cir.1994) (holding questions relating to habeas procedural bar, including characterization and effect of prior state proceeding, are matters of federal law that federal courts must determine for themselves).
 

 [6]
 

 . We note, however, that our informal survey of published Oklahoma post-conviction cases indicates that, ordinarily, counsel is provided for a state petitioner when evidentiary proceedings are considered necessary under § 1084.
 
 See generally
 
 Okla.Stat. tit. 22, § 1082 ("Counsel ... shall be made available ... [whenever] necessary to provide a fair determination of meritorious claims.”).
 

 [7]
 

 . Analogously, when a criminal defendant has been deprived of a direct appeal, outright vaca-tur of the underlying conviction may be avoided provided the state affords the defendant "the
 
 equivalent
 
 of direct appellate review.”
 
 Hannon v. Maschner,
 
 981 F.2d 1142, 1145 (10th Cir.1992) (emphasis added).
 

 [8]
 

 . If the state court determines that adult certification would not have been given, petitioner’s criminal convictions cannot stand.
 
 See Bromley,
 
 561 F.2d at 1356 n. 6;
 
 Edwards,
 
 591 P.2d at 321. We note that if a juvenile delinquency proceeding — rather than a criminal prosecution — had been conducted in 1971, state law evidently would have mandated petitioner's release from detention as a delinquent by his nineteenth birthday, in 1974.
 
 See
 
 Okla.Stat. tit. 10, § 1139.