**F I L E D**
**JUN 21 2002**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN MICHAEL HOOKER,

Petitioner-Appellant,

v.

MIKE MULLIN, Warden, Oklahoma State Penitentiary; THE ATTORNEY GENERAL OF THE STATE OF OKLAHOMA,

Respondents-Appellees.

Nos. 00-6181 & 00-6186

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA (D.C. No. 97-CV-284-C)**

.

James P. Moran, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colorado, for Petitioner-Appellant.

Sandra D. Howard (W.A. Drew Edmondson, Attorney General of Oklahoma, with her on the brief), Assistant Attorney General Oklahoma City, Oklahoma, for Respondents-Appellees.

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

**BRORBY** , Senior Circuit Judge.

---

An Oklahoma jury convicted John Michael Hooker for the first degree murders of his common-law wife, Sylvia Stokes, and her mother, Drucilla Morgan. In accordance with the verdict, the Oklahoma district court sentenced him to death. He appeals the denial of his federal habeas corpus petition seeking to overturn those convictions and sentences. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c), we affirm the district court's denial of habeas corpus relief. [1]

BACKGROUND

The facts were well-summarized by the Oklahoma Court of Criminal Appeals in reviewing Mr. Hooker's direct appeal. *Hooker v. State* , 887 P.2d 1351 (Okla. Crim. App. 1994), *cert. denied* , 516 U.S. 858 (1995). We will restate the pertinent facts. Mr. Hooker and Ms. Stokes lived together for eight years and had three children. Their relationship was turbulent; they frequently separated and reconciled. It was also a violent relationship. Prior to the murders, Mr. Hooker

---

[1] Mr. Hooker filed a pro se notice of appeal (No. 00-6181). An order of this court filed June 8, 2000 granted appointed counsel's motion to withdraw and appointed new counsel for Mr. Hooker. New counsel filed a notice of appeal (No. 00-6186), which we consolidated with No. 00-6181.

threatened and attacked Ms. Stokes, once inflicting severe head lacerations. Five months before her murder, Ms. Stokes obtained a Victim Protective Order against Mr. Hooker. At that time, she expressed fear he would harm her and stated she did not want to be "like the others dead." Mr. Hooker distrusted Ms. Stokes. He was angry every time they broke up and was jealous when other men paid attention to her. When he was drinking, he talked about killing her. He also resented Ms. Morgan and indicated he would "get" both of them.

In early 1988, Mr. Hooker, Ms. Stokes and their three children lived at the Providence Apartments in Oklahoma City. In late March, Ms. Stokes and the children moved out of the apartment they shared with Mr. Hooker because Ms. Stokes was afraid Mr. Hooker might harm her and the children. They moved in with Ms. Morgan, who lived in the same apartment complex. On March 27, 1988, Mr. Hooker repeatedly visited the Morgan apartment, attempting to persuade Ms. Stokes to return to his apartment. She refused, and Mr. Hooker returned to his apartment alone. Later that afternoon, neighbors saw Ms. Morgan and Ms. Stokes entering Mr. Hooker's apartment.

Two women in the apartment below Mr. Hooker's apartment heard bumping and thumping noises, like someone rapidly moving furniture and throwing things.

Although they heard no voices, they prayed about the noises because they thought Mr. Hooker and Ms. Stokes were fighting again. Other witnesses saw Mr. Hooker with blood on his clothing, apparently after he left the apartment. The next day, Cynthia Stokes went to Mr. Hooker's apartment to check on her mother and sister. She pushed the door open slightly and saw her mother lying on the floor in a pool of blood. The police found Ms. Morgan and Ms. Stokes in the apartment. Both women died of multiple stab wounds.

The police investigation revealed the killer left the apartment through a bedroom window. The police found a knife, with the victims' blood on it, on the floor below the window. A partial bloody footprint in the apartment matched one of Mr. Hooker's tennis shoes. The police arrested Mr. Hooker approximately one week after the murders. Police found blood matching the victims' blood type (B) on Mr. Hooker's blue jeans. Mr. Hooker has type O blood.

The jury convicted Mr. Hooker of two counts of first degree murder. At the second stage of trial, defense counsel stipulated (1) Mr. Hooker had prior violent felony convictions, and (2) he would be a continuing threat to society. In addition to the evidence presented at the first stage of trial, the State presented aggravating evidence of Mr. Hooker's nonchalant attitude about the killings when

police arrested him. Mr. Hooker presented mitigating evidence about his prior offenses, his excellent prison record, his work ethic after he was released from prison, his love for his children and Ms. Stokes, his substance abuse problem, his changed behavior while using drugs, his fragile coping skills, his feelings of inferiority, his strong interpersonal skills, his traumatic family background and his chronic underlying depression.

The jury found four aggravating circumstances: (1) Mr. Hooker had a previous felony conviction involving the use or threat of violence; (2) he knowingly created a great risk of death to more than one person; (3) the murders were especially heinous, atrocious or cruel; and (4) a probability existed he would commit future acts of violence constituting a continuing threat to society. In accordance with the jury's recommendation, the trial court sentenced Mr. Hooker to death for both murders. The Oklahoma Court of Criminal Appeals affirmed the convictions and death sentences, and later denied post-conviction relief. *Hooker*, 887 P.2d 1351 (upholding convictions and sentences), *aff'd* 934 P.2d 352 (Okla. Crim. App. 1997) (denying post-conviction relief).

The federal district court denied habeas corpus relief. It granted a certificate of appealability on two issues: (1) trial counsel's ineffectiveness in

stipulating to two aggravating circumstances, and (2) the effect of the improper

admission of Ms. Stokes' statement, set forth in the Victim's Protective Order,

that Mr. Hooker had previously killed others.  We granted a certificate of

appealability on two additional issues:  (1) the trial court's failure to instruct on

the lesser included offense of manslaughter, and (2) the sufficiency of the

evidence of conscious suffering to support the jury's finding especially heinous,

atrocious or cruel aggravating circumstances. [2]

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, if a

claim is adjudicated on its merits in state court, a petitioner is entitled to federal

habeas relief only if he can establish the state court decision "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," or "was based on an

unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  The Act also requires

---

[2] We also granted a certificate of appealability as to "[w]hether the petitioner's constitutional rights were denied by a failure of the state trial court to instruct the jury it had to find the victim consciously suffered before it could apply the 'especially heinous' aggravator."  However, in his brief, Mr. Hooker concedes he "is not challenging the jury instruction" in this habeas petition.  We, therefore, will not address this issue.

federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption with clear and convincing evidence. *Id.* § 2254(e)(1). If the state courts did not decide a claim on its merits and the claim is not procedurally barred, we review the district court's legal conclusions *de novo* and its factual findings, if any, for clear error. *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001), *petition for cert. filed*, (U.S. May 17, 2002) (No. 01-10302).

## DISCUSSION

### I. Admission of Victim Protective Order Statement

Mr. Hooker argues his trial was fundamentally unfair and he was denied due process of law when the trial court admitted a statement made by Ms. Stokes in a Victim Protective Order. Five months before the murders, Ms. Stokes obtained a Victim Protective Order against Mr. Hooker. Despite defense objections, the district court allowed the jury to consider Ms. Stokes' statement in the protective order: "[I] feel he will harm me" and "please help me ... I don't want to be like the others dead."

Mr. Hooker raised this claim in his direct appeal. The Oklahoma Court of Criminal Appeals concluded the trial court erred in admitting the statement, "I

don't want to be like the others dead," because it implied Mr. Hooker "committed past acts of violence in which he killed other people." *Hooker*, 887 P.2d at 1360. Nonetheless, the Oklahoma appellate court found the error harmless beyond a reasonable doubt because the "error did not contribute to the verdict" and the evidence supporting Mr. Hooker's two death sentences was overwhelming. *Id.* at 1360 & n.19. Mr. Hooker presented similar arguments in both his state and federal petitions for post-conviction relief. Those courts rejected his claims for substantially the same reasons.

In the habeas petition before us, Mr. Hooker claims the "others dead" statement was inflammatory and extremely prejudicial. Mr. Hooker also argues the statement was uncorroborated hearsay,[3] remote, misleading, false, of slight probative value, and the trial court failed to instruct the jury on the limited

---

[3] Mr. Hooker's petition hints the admission of such hearsay may have violated the Confrontation Clause because the statement "could not be subject to the scrutiny of cross-examination." The argument is conclusory, and we need not address it. *See LaFevers v. Gibson*, 182 F.3d 705, 725 (10th Cir. 1999) ("We have repeatedly warned litigants that issues adverted to in a perfunctory manner and without developed argumentation are deemed waived on appeal."). Even if we were to address a Confrontation Clause argument and assume without deciding there was a violation, any such violation is subject to harmless error analysis. *See Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir.), *cert. denied*, 525 U.S. 950 (1998). Under the circumstances of this case, we conclude admission of the statement did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

purpose of its admission. For these reasons, Mr. Hooker believes admission of the statement deprived him of due process and resulted in a fundamentally unfair trial.

We limit our review [4] to consideration of alleged violations of the Constitution, laws or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Mr. Hooker, therefore, can receive habeas relief only if the erroneous admission of evidence rendered his trial as a whole fundamentally unfair. *Mitchell v. Gibson*, 262 F.3d 1036, 1053 (10th Cir. 2001). In federal habeas, we review state court evidentiary rulings "to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997).

Considering the overwhelming evidence produced at trial illustrating the very turbulent, and sometimes violent, nature of Mr. Hooker's relationship with Ms. Stokes, this singular statement was not so grossly prejudicial that it infected

---

[4] Although the State argued procedural bar before the federal district court, asserting the claim was raised and considered on state law grounds, the State does not continue to argue procedural bar before this court.

the trial. Several witnesses testified Mr. Hooker threatened to kill Ms. Stokes when he was angry with her. Mr. Hooker's conviction and death sentence were supported by overwhelming evidence. In light of this evidence, we conclude Mr. Hooker received a fair trial. Accordingly, the district court did not err in denying habeas relief on this ground.

## II.  Failure to Instruct on Lesser Included Offense of Manslaughter

Relying on *Beck v. Alabama*, Mr. Hooker argues the trial court's failure to give a jury instruction on a lesser included offense violated his due process right. *See Beck v. Alabama*, 447 U.S. 625, 627 (1980) (holding a court may not constitutionally sentence a defendant to death "after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict"). Specifically, Mr. Hooker asserts the trial court erred in denying his request for an instruction on heat of passion manslaughter.

On direct appeal, the Oklahoma Court of Criminal Appeals upheld the trial court's denial of a manslaughter instruction. The state appellate court based its decision on three different rationales. First, it held Mr. Hooker was not entitled to any lesser included offense instructions because Mr. Hooker relied on an

-10-

innocence defense at trial. *Hooker*, 887 P.2d at 1361 & n.24. Second, the appellate court held the jury had discretion to impose a sentence less than death. *Id.* at 1361 n. 25. And third, the court determined the evidence did not support a manslaughter instruction. *Id.*

The first two rationales used by the Oklahoma appellate court have been rejected by Tenth Circuit precedent. *See Mitchell*, 262 F.3d at 1049-50 (holding district court cannot deny a defendant's request for a lesser included offense jury instruction on the basis that the defendant claims he is innocent); *Hogan v. Gibson*, 197 F.3d 1297, 1304 (10th Cir. 1999) ("[A] defendant in a capital case is entitled to a lesser included instruction when the evidence warrants it, notwithstanding the fact that the jury may retain discretion to issue a penalty less than death." (Quotation marks, alterations and citation omitted.)), *cert. denied*, 531 U.S. 940 (2000). Consequently, we must determine whether the result is supported by the third rationale used by the Oklahoma Court of Criminal Appeals – the evidence did not support giving the heat of passion manslaughter instruction. *See Hooker*, 887 P.2d at 1361. [5]

_____

[5] Mr. Hooker argues the Oklahoma Court of Criminal Appeals did not consider all the evidence because it did not discuss the evidence in reaching its conclusion. However, the appellate court correctly stated the law at the beginning of its discussion. "A trial court must instruct the jury on lesser-included offenses when the lesser-included offense or the defendant's theory of the case is

-11-

Due process requires a state trial court to give a lesser included offense instruction if the evidence would support a conviction on that offense. *Hopper v. Evans*, 456 U.S. 605, 609, 611 (1982) (citing *Beck*). Thus, a lesser included offense instruction should be given if the evidence would permit the jury to find the defendant guilty of the lesser offense and acquit him of the capital offense. *Id.* at 611. We review a state trial court's decision the evidence did not support a manslaughter instruction to determine whether it was unreasonable. *See Valdez v. Ward*, 219 F.3d 1222, 1242 (10th Cir. 2000), *cert. denied*, 532 U.S. 979 (2001). [6]

Under Oklahoma law, a person commits first degree heat of passion manslaughter if the homicide is "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute

---

supported by *any* evidence in the record." *Hooker*, 887 P.2d at 1361 (emphasis added). The state appellate court's failure to discuss the evidence does not mean it did not follow the law as stated in its opinion. *See Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (deferring to state court's result, even though court did not express its reasoning).

[6] This court has not yet resolved whether a state appellate court's sufficiency of the evidence inquiry involves a legal determination governed by 28 U.S.C. § 2254(d)(1) or a factual determination governed by 28 U.S.C. § 2254(d)(2). *McCracken*, 268 F.3d at 981 n.5. Our decision here is the same under either standard.

excusable or justifiable homicide." Okla. Stat. tit. 21, § 711(2). The elements of heat of passion manslaughter are: "1) adequate provocation; 2) a passion or emotion such as fear, terror, anger, rage, or resentment; 3) homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and 4) a causal connection between the provocation, passion and homicide." *Charm v. State*, 924 P.2d 754, 760 (Okla. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997). Mr. Hooker claims: (1) Ms. Stokes provoked him by moving out of his apartment and refusing to return; (2) he experienced strong emotion combined with the influence of alcohol; (3) the murders occurred soon after Ms. Stokes refused to move back to his apartment; and (4) the provocation caused him to commit the murders.

However, the record and the applicable law belie Mr. Hooker's contentions. First, there is no evidence Mr. Hooker was adequately provoked. Adequate provocation is "any improper conduct of the deceased toward the defendant which naturally or reasonably would have the effect of arousing a sudden heat of passion within a reasonable person in the position of the defendant." *Washington v. State*, 989 P.2d 960, 968 n.4 (Okla. Crim. App. 1999). Neither victim did anything improper to provoke Mr. Hooker. It was not improper for Ms. Stokes to move out of Mr. Hooker's apartment because she feared for her safety and the safety of her

-13-

children.  Second, there is no evidence Mr. Hooker experienced rage sufficient for a manslaughter instruction.  *See Hogan*, 197 F.3d at 1308 (holding rage must be so severe as to render the defendant "incapable of forming a design to effect death").  As to the third and fourth elements of manslaughter, the record shows Mr. Hooker had a reasonable opportunity for his passions to cool.  *See Miller v. Champion*, 262 F.3d 1066, 1076 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 1092 (2002); *Lewis v. State*, 970 P.2d 1158, 1166 (Okla. Crim. App. 1998) (holding the defendant had a reasonable opportunity for passion to cool where defendant's realization that victim was involved with other men did not occur in close time proximity to rage spurring his actions).

Mr. Hooker presented no evidence suggesting he committed these murders in a heat of passion.  The evidence simply did not support the manslaughter instructions he requested.  Accordingly, we conclude the Oklahoma Court of Criminal Appeal's decision was not unreasonable.  *See* 28 U.S.C. § 2254(d).  The trial court's refusal to give the manslaughter instruction does not warrant habeas relief.

**III. Sufficiency of Evidence for Heinous, Atrocious or Cruel Aggravator**

Mr. Hooker argues the evidence of conscious suffering was insufficient to support the jury's finding the murders were especially heinous, atrocious or cruel. Mr. Hooker contends "[t]he prosecution's sole evidence to support the application of the [heinous, atrocious or cruel] aggravator came from the medical examiner." Mr. Hooker characterizes the medical examiner's testimony as equivocal and claims it is insufficient to support the aggravator.

To establish the heinous, atrocious or cruel aggravator under Oklahoma law, the prosecutor must prove the murder was "'preceded by torture or serious physical abuse. Torture includes the infliction of either great physical anguish or extreme mental cruelty, while physical abuse requires evidence of conscious physical suffering.'" *Romano v. Gibson*, 239 F.3d 1156, 1176 (10th Cir.) (quoting *Hale v. Gibson*, 227 F.3d 1298, 1335 (10th Cir. 2000), *cert. denied*, 533 U.S. 957 (2001)), *cert. denied*, 122 S. Ct. 624 & 628 (2001). *See also Medlock v. Ward*, 200 F.3d 1314, 1321 (10th Cir.), *cert. denied*, 531 U.S. 882 (2000).

The Oklahoma Court of Criminal Appeals held there was sufficient evidence of conscious suffering to support a finding of the especially heinous, atrocious or cruel aggravator. *Hooker*, 887 P.2d at 1365, 1369. The Oklahoma

-15-

court presumably applied the rational fact finder standard. *See Jackson v. Virginia*, 443 U.S. 307 (1979); *McCracken*, 268 F.3d at 981. "That standard required the [court] to view the evidence in the light most favorable to the prosecution and determine whether any rational finder of fact could have found the aggravator beyond a reasonable doubt." *McCracken*, 268 F.3d at 981. In *Hooker*, the court determined:

> In [Mr.] Hooker's case, the evidence supports a finding that the deaths of [Ms.] Morgan and [Ms.] Stokes were preceded by torture or physical abuse. Both women were stabbed a number of times; both women lived for one to ten minutes before dying; [Ms.] Stokes sustained defensive wounds; and there was evidence that a physical struggle had occurred in the apartment. The evidence shows conscious physical suffering sufficient to support this aggravating circumstance.

*Hooker*, 887 P.2d at 1365 (footnote omitted).

Although Mr. Hooker raised this issue on direct criminal appeal, he did not raise this distinct issue in federal district court. [7] The federal district court did,

---

[7] Typically, this court does not consider issues that were not first presented to the federal district court. *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir.), *cert. denied*, 531 U.S. 998 (2000). "This general waiver rule is not absolute, however, and we may depart from it in our discretion." *Sussman v. Patterson*, 108 F.3d 1206, 1210 (10th Cir. 1997) (quotation marks, alterations and citation omitted). Here, we exercise our discretion and consider the issue on its merits because the record is sufficient to resolve the issue on its merits. *See United States v. Mendez*, 118 F.3d 1426, 1431 n.2 (10th Cir. 1997) (considering claim not raised in the district court "[b]ecause the proceedings below resulted in a record of amply sufficient detail and depth from which the determination may be made").

however, address the issue when considering Mr. Hooker's argument his trial counsel was ineffective for conceding the murders were especially heinous, atrocious or cruel. The federal district court determined there was sufficient evidence the victims struggled with Mr. Hooker before their deaths and their deaths were not instantaneous.

In considering Mr. Hooker's sufficiency of the evidence argument, "[t]he question we must address is whether the [Oklahoma Court of Criminal Appeals]' decision was reasonable." *McCracken*, 268 F.3d at 981. *See* 28 U.S.C. § 2254(d)(1) and (2). [8] Here, we conclude the Oklahoma Court of Criminal Appeals' decision is reasonable and supported by the evidence presented at trial.

Contrary to Mr. Hooker's assertion, the prosecution's evidence supporting the application of the heinous, atrocious or cruel aggravator came from exhibits and from testimony by the police and neighbors, as well as from the medical examiner's testimony. Two police officers testified there were signs of a struggle in the apartment. The jury reviewed pictures of blood stains and gouge marks on the apartment wall. Two witnesses, who were in the apartment below, testified

---

[8] We reach the same result under either 28 U.S.C. § 2254(d)(1) or (2).

-17-

they heard loud noises, like furniture moving, and like "things were being thrown around." They assumed Mr. Hooker and Ms. Stokes were fighting.

The medical examiner's description of the victims' injuries also strongly supports the conclusion the murders were especially heinous, atrocious or cruel. The medical examiner testified Ms. Morgan was stabbed multiple times. She had one stab wound to the right forehead, which damaged soft tissue and caused no significant damage. Ms. Morgan had two stab wounds in the right shoulder region near the collar bone. These wounds went into the chest cavity, penetrated her heart and pulmonary artery and caused massive internal bleeding. Ms. Morgan also sustained stab wounds to the right breast and right upper arm which damaged only soft tissue. There were two stab wounds in the right upper quadrant of her abdomen, which passed into her abdomen and into the liver, resulting in internal bleeding. She had a stab wound on the back of her right shoulder, which damaged only soft tissue. She suffered from stab wounds in the middle of her back, which passed completely through the skin of the back and exited on one side, and a stab wound in the middle of her lower back. On the back of the right elbow it appeared the knife entered and exited and re-entered in the back of her elbow. Ms. Morgan also had scratches on her wrists and an abrasion on the front of her right shoulder.

The medical examiner concluded Ms. Morgan died of multiple stab wounds and her death was not instantaneous. When asked how long it would take to expire from such wounds, the medical examiner stated: "That's extremely difficult to say with any certainty. However, I would certainly say it would be a matter of several minutes. Let's say certainly less than maybe ten minutes and more than two or three." The medical examiner also testified he "saw nothing to indicate she would have been unconscious."

Ms. Stokes also had multiple stab wounds. The primary fatal wound was a stab wound to the left chest region on the collar bone, which went through the left lung and severed the pulmonary artery, causing blood to enter her airway. She was stabbed just above the left eye and the left check. Neither of these wounds was fatal. She had a superficial stab wound about the middle of her neck on the left side. She suffered other soft tissue stab wounds to the left breast and shoulder, as well as a stab wound on her left side near her armpit, which did not appear to have been fatal. She had other wounds the medical examiner concluded were defensive injuries. Ms. Stokes drowned in her own blood. The medical examiner testified Ms. Stokes' death was not instantaneous. She died between one and ten minutes after the attack. He also saw no evidence indicating she was unconscious during the attack and stated she was probably conscious.

Mr. Hooker relies on *Thomas v. Gibson*, 218 F.3d 1213 (10th Cir. 2000), to argue the evidence was not sufficient to establish the victims consciously suffered before their deaths. In *Thomas*, we held the state did not present sufficient evidence of "conscious suffering" in support of the heinous, atrocious and cruel aggravator. *Id.* at 1227-28. However, the case before us presents more evidence of conscious suffering than *Thomas*.

This case is distinguishable from *Thomas* for two reasons. First, in *Thomas,* there was no evidence of a struggle, the victim did not have defensive wounds, and there was no witness testimony of sounds of a struggle. *Thomas*, 218 F.3d at 1228. Here, police officers testified there were signs of a struggle in the apartment, the medical examiner testified Ms. Stokes had defensive wounds,[9] and neighbors testified they heard sounds of a struggle. The Oklahoma Court of Criminal Appeals was reasonable in concluding this evidence demonstrated the victims were conscious of physical suffering. *See Romano*, 239 F.3d at 1176-77 (holding Oklahoma Court of Criminal Appeals' decision upholding heinous, atrocious or cruel aggravator was not unreasonable when the victim "suffered a

---

[9] Although the medical examiner did not characterize Ms. Morgan's wounds as defensive wounds, the jury could certainly infer the scratches on her wrists, abrasion on her shoulder, and knife wound through her arm near her elbow were sustained while defending herself from Mr. Hooker. *See Romano*, 239 F.3d at 1177 (evidence may permit inferences by the jury).

-20-

number of nonlethal wounds, which the jury could have concluded preceded his loss of consciousness" and the victim "suffered abrasions and scrapes, ... indicating a struggle did take place"); *Romano v. State*, 909 P.2d 92, 118-19 (Okla. Crim. App. 1995) (determining evidence sufficient where there was evidence of defensive wounds on victim, living room in disarray, and witness testimony of hearing loud banging), *cert. denied*, 510 U.S. 855 (1996).

In addition, this case is distinguishable from *Thomas* because, in *Thomas*, the victim sustained injuries to the head which could have rendered the victim unconscious. *Thomas,* 218 F.3d at 1227-28.[10] In contrast, Ms. Stokes and Ms. Morgan sustained only superficial head injuries. Furthermore, the medical examiner testified he had no reason to believe Ms. Morgan and Ms. Stokes were unconscious.[11] In light of this record, the Oklahoma Court of Criminal Appeals

---

[10] In *Thomas*, we determined the state appellate court's decision was unreasonable because it held "[i]t is highly improbable that [the victim] would have been beaten, strangled and stabbed if she was rendered immediately unconscious by the first blow," and this holding was directly contrary to undisputed testimony by the medical examiner that Mr. Thomas stabbed his victim twice *after* she was dead. *Thomas*, 218 F.3d at 1228 (quoting *Thomas v. State,* 811 P.2d 1337, 1349 (Okla. Crim. App. 1991).

[11] Mr. Hooker claims the medical examiner's testimony was not compelling because the examiner "could only testify that there was no evidence the victims were unconscious." However, the evidence need not compel a jury finding of conscious physical suffering to be constitutionally sufficient. *See Romano*, 239 F.3d at 1177 ("Although this evidence does not compel these inferences, the

was reasonable in concluding the evidence was constitutionally sufficient to show the murders were especially heinous, atrocious or cruel. *See Romano* , 239 F.3d at 1176; 28 U.S.C. § 2254(d).

## IV. Ineffective Assistance of Counsel at Penalty Phase

Mr. Hooker next argues his trial counsel [12] were ineffective. Specifically, Mr. Hooker claims his counsel: (1) improperly stipulated to the continuing threat aggravator; (2) improperly stipulated to the prior violent felony aggravator; and (3) improperly conceded during closing argument the murders were especially heinous, atrocious or cruel. Mr. Hooker argues "by stipulating and conceding all three aggravators, trial counsel rendered the penalty phase effectively meaningless." Thus, Mr. Hooker believes "stipulating to the aggravators was not a reasonable strategic decision."

---

evidence permits them."). Further, the Oklahoma Court of Criminal Appeals did not rely on this specific statement in concluding the evidence was sufficient to support the aggravator. *Hooker*, 887 P.2d at 1365. Our review on habeas is limited to determining whether the Oklahoma court's decision was reasonable. In light of this standard, we conclude the evidence relied upon by the Oklahoma Court of Criminal Appeals was sufficient to support the aggravator.

[12] Two attorneys represented Mr. Hooker during his trial.

To obtain habeas relief on an ineffective assistance of counsel claim, Mr. Hooker must establish his counsel's performance was deficient and he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. To show deficient performance, Mr. Hooker must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (further quotation marks omitted). *See also Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986). "[C]ounsel's performance [must be] completely unreasonable, not simply wrong." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir.), *cert. denied*, 531 U.S. 938 (2000).

### A. Stipulation to the Continuing Threat and Prior Violent Felony Aggravators

In his state application for post-conviction relief, Mr. Hooker first raised his argument that counsel was ineffective for stipulating to the continuing threat and prior violent felony aggravators. The Oklahoma Court of Criminal Appeals declined to consider the issue, concluding: "Because this claim could have been raised on direct appeal but was not, it is now waived." *Hooker v. State*, 934 P.2d

-23-

352, 355 (Okla. Crim. App. 1997). The State, however, does not argue procedural bar here. Accordingly, we proceed to the merits. *See Hooks*, 184 F.3d at 1216 (requiring State to assert affirmative defense of procedural bar).

Mr. Hooker argues counsel's stipulation to the continuing threat and prior violent felony aggravators constituted deficient performance for two reasons: (1) the violent felony convictions were constitutionally invalid because Mr. Hooker committed them as a juvenile and, at the time of the stipulation, he had not been properly certified as an adult, and (2) stipulating to the aggravators was not a reasonable strategic decision, as the factual circumstances underlying the felonies were mitigating. [13] We address each of these arguments in turn.

**1. Validity of Juvenile Convictions**

Mr. Hooker argues trial counsel should not have stipulated to the continuing threat and prior violent felony aggravators because the basis for the

_____

[13] Mr. Hooker also claims counsel improperly entered into the stipulations because Mr. Hooker did not personally stipulate to the aggravators. However, he does not argue he had a constitutional right to personally stipulate to the aggravators. The Oklahoma Court of Criminal Appeals' decision Mr. Hooker received the benefit of the stipulations, and was therefore not prejudiced by the fact he did not personally stipulate, *Hooker*, 887 P.2d at 1364 & n.35, was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

stipulations were two unconstitutionally obtained juvenile convictions. Mr. Hooker was convicted for manslaughter and assault and battery with a dangerous weapon with intent to kill when he was seventeen years old. At the time of Mr. Hooker's prior convictions, Oklahoma, under statutory authority, tried sixteen- and seventeen-year-old males as adults, but tried females of the same age as juveniles, unless certified to stand trial as adults. We held this sex-based distinction violated the Equal Protection Clause. *See Lamb v. Brown*, 456 F.2d 18, 20 (10th Cir. 1972); *see also Radcliff v. Anderson*, 509 F.2d 1093, 1096 (10th Cir. 1974) (holding *Lamb* applies retroactively). Mr. Hooker claims, because he was convicted without being certified to stand trial as an adult, his convictions should not serve as the basis for the aggravators.

Although Mr. Hooker did not bring an ineffective assistance of counsel claim on direct appeal, he did argue the State obtained his prior felony convictions under a juvenile system subsequently found unconstitutional by the Tenth Circuit. Recognizing Mr. Hooker's prior convictions were infected by an unconstitutional Oklahoma statute, the Oklahoma Court of Criminal Appeals remanded the case to the trial court for a retroactive adult certification hearing to determine whether Oklahoma would have certified Mr. Hooker as an adult at the time of his prior convictions. *Hooker*, 887 P.2d at 1362; *see also Bromley v.*

*Crisp*, 561 F.2d 1351, 1356-57 & n.6 (10th Cir. 1977) (holding conviction need not be set aside if an evidentiary hearing establishes juvenile court would have certified defendant as adult). At the retroactive adult certification hearing, the State bore the burden of proving certification would have occurred. *See Kelley v. Kaiser*, 992 F.2d 1509, 1514 (10th Cir. 1993). To meet its burden, the State introduced the record and preliminary hearing transcript from his prior convictions. After the hearing, the trial court entered an order concluding Mr. Hooker would have been certified as an adult if a hearing had been held. The Oklahoma Court of Criminal Appeals affirmed. *See Hooker*, 887 P.2d at 1363.

Mr. Hooker argues he was denied due process and a fair hearing because the State's use of the preliminary hearing transcript precluded him from confronting witnesses. We disagree. In a retroactive adult certification hearing, due process requires a hearing, counsel, access to the materials considered by the court, and a statement of reasons. *See Kent v. United States*, 383 U.S. 541, 554, 557, 561 (1966) (discussing due process rights generally); *Green v. Reynolds*, 57 F.3d 956, 960-61 (10th Cir. 1995) (holding due process rights apply to Oklahoma retroactive adult certification hearings). The hearing, however, need not conform to the requirements of a criminal trial or the usual administrative hearing. *Kent*, 383 U.S. at 562. On direct appeal, Mr. Hooker made a similar due process

argument. The Oklahoma Court of Criminal Appeals rejected Mr. Hooker's argument because "[a]t the ... preliminary hearing, [Mr.] Hooker was present, he was represented by counsel and he had the opportunity to cross-examine the State's witnesses." *Hooker*, 887 P.2d at 1363 n.31. We agree Mr. Hooker's right to confrontation was satisfied. Accordingly, the Oklahoma Court of Criminal Appeals' determination Mr. Hooker received due process is not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

Mr. Hooker also argues the Oklahoma appellate court failed to apply the eight factors set forth in *Kelley*, 992 F.2d at 1513 n.5, 1514, when determining whether to retroactively certify Mr. Hooker as an adult. This argument is without merit. Although the state appellate court did not discuss each factor, it did cite to *Kelley*, as well as the Oklahoma trial court's "extensive and complete findings of fact and conclusions of law." *Hooker* , 887 P.2d at 1362-63, 1363 n.33. The trial court's order painstakingly analyzed each of the *Kelley* factors. We will not fault the Oklahoma Court of Criminal Appeals for declining to restate all the information in the trial court's order.

Whether Mr. Hooker would have been certified to stand trial as an adult is a fact question. *Kelley* , 992 F.2d at 1514. Mr. Hooker has not rebutted by clear

and convincing evidence the Oklahoma Court of Criminal Appeals' finding he would have been certified to stand trial as an adult at the time of his prior convictions. *See* 28 U.S.C. § 2254(e)(1). Consequently, we cannot conclude the court's determination was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). [14]

Mr. Hooker's prior convictions were constitutionally obtained. Therefore, Mr. Hooker's argument counsel were ineffective because they stipulated to aggravators based on unconstitutional convictions must fail.

**2. Reasonableness of Strategy to Stipulate to Aggravators**

Mr. Hooker next argues trial counsel's decision to stipulate to the prior violent felony and continuing threat aggravators was not reasonable because the factual circumstances underlying the felonies were mitigating. Specifically, Mr. Hooker contends the shootings resulting in his manslaughter and assault and battery convictions were accidental.

---

[14] We afforded the Oklahoma Court of Appeals some deference on the due process and retroactive adult certification issues because the Antiterrorism and Effective Death Penalty Act prescribes our review of claims considered by a state appellate court. *See* 28 U.S.C. § 2254(d). The Oklahoma Court of Appeals did not, however, rule on the ineffective assistance of counsel issue. Consequently, we review that claim *de novo*. *See McCracken*, 268 F.2d at 975.

Mr. Hooker further argues counsels' closing arguments erased any tactical advantage of not discussing the factual circumstances of the prior convictions:

> John Hooker's killed in the past. We've conceded that. Look at the prison records there and you'll see in there that he tells the parole summary board that he shot his best friend. That's the way it happened and that's no excuse for pulling a gun out and firing into a crowd. It's no excuse.

> Those prison records aren't written up two weeks ago or three weeks ago. They're from 1970. He went in when he was sixteen years old for killing his best friend. Killing his best friend. Can you imagine what that – I, too, believe in the sanctity of human life as [the prosecutor] said.

We do not agree with Mr. Hooker's arguments.

Mr. Hooker has not established his counsel's performance was deficient. In light of *Strickland* 's direction to deferentially scrutinize counsel's performance and not second guess counsel's strategy after an adverse decision, 466 U.S. at 689, we cannot say counsel performed below prevailing professional norms in stipulating to the two aggravators. Without the stipulation, the State would have presented the factual evidence of the circumstances resulting in the juvenile convictions. While Mr. Hooker now states the shootings were accidental, he pled guilty to both charges. Rather than stipulating to the aggravators, Mr. Hooker argues his counsel should have called a witness to testify his juvenile convictions were based on accidental shootings. We cannot conclude counsel were

ineffective for stipulating to the aggravators, even though there was some mitigating evidence, when Mr. Hooker pled guilty to the prior charges. [15] Here, counsel made a strategic decision Mr. Hooker's admission of guilt to the prior charges would outweigh any mitigating testimony. This decision was within the parameters of reasonable professional competence.

Moreover, we conclude the jury would have found these two aggravating circumstances regardless of the stipulations. *See* *Brown v. Dixon*, 891 F.2d 490, 500-01 (4th Cir. 1989) (making similar determination where counsel indicated to jury he thought jury would find two aggravators). *See also* *Smith v. Dixon*, 766 F. Supp. 1370, 1392-93 (E.D.N.C. 1991) (finding no ineffective assistance where counsel's statement that there were aggravators was merely a statement of the obvious), *rev'd on other grounds*, 14 F.3d 956 (4th Cir. 1994) (en banc). Accordingly, counsel retained credibility with the jury by stipulating to the

---

[15] We note this is consistent with the Oklahoma Court of Criminal Appeals' decision on direct review. The Oklahoma court stated: "It is apparent from the record that the decision to enter the stipulations was part of a calculated strategy designed to alleviate the potential harm that might occur if the State were allowed to put on its proof regarding the two prior violent felony convictions." *Hooker*, 887 P.2d at 1364. Because Mr. Hooker did not raise ineffective assistance of counsel as an issue on direct appeal, the Oklahoma court could not consider the issue and the statement is dicta. We have, therefore, conducted *de novo* review of this issue. *See McCracken*, 268 F.3d at 975.

aggravators. Counsel's stipulations, therefore, were "an entirely understandable strategic decision." *Fox*, 200 F.3d at 1295.

Further, we do not believe counsel were ineffective for referring to some of the negative aspects of Mr. Hooker's prior convictions in closing argument. In its closing arguments, the State argued "[t]he defendant before you today has caused the death now of three people. One person in 1971, and now two people in 1988. He assaulted another in '71 with the intent to kill." In response to this argument, counsel for Mr. Hooker attempted to persuade the jury Mr. Hooker did not deserve the death penalty. Mr. Hooker's counsel asked the jurors to consider his record as an outstanding prisoner. Knowing the potentially mitigating prison records also contained information about Mr. Hooker's prior convictions, Mr. Hooker's counsel chose to acknowledge Mr. Hooker previously killed his best friend. Like the decision to stipulate to the aggravators, this decision was reasonably designed to retain credibility with the jurors. *Fox*, 200 F.3d at 1295. Consequently, we conclude Mr. Hooker's counsel were not ineffective. Because we conclude counsel were not ineffective in stipulating to the continuing threat and prior violent felony aggravators, we need not address whether Mr. Hooker was prejudiced by these stipulations. *See Strickland*, 466 U.S. at 697.

**B. Conceding Especially Heinous, Atrocious, or Cruel Aggravator**

Lastly, Mr. Hooker argues trial counsel were ineffective because they conceded the murders were especially heinous, atrocious or cruel. During closing argument, defense counsel stated "[t]hose pictures that are there, they're awful. They're especially heinous, atrocious and cruel by any stretch of the imagination. Those two women by no means deserved to die."

The State argues Mr. Hooker has not received a certificate of appealability with respect to this issue. We agree. The federal district court granted a certificate of appealability as to "ineffective assistance of trial counsel in stipulating to two of the three aggravating circumstances." Because we did not grant a certificate of appealability as to whether counsel were ineffective in conceding the especially heinous aggravator, we need not consider this issue.

However, even if we consider this claim on the merits, Mr. Hooker is not entitled to habeas relief. When viewed in context with the entire closing argument, we doubt the jurors would have interpreted the argument the pictures were heinous, atrocious and cruel as a statement the murders were heinous, atrocious or cruel. Immediately after stating the pictures were especially heinous, atrocious and cruel, Mr. Hooker's counsel proceeded to discuss the mitigating

circumstances. After discussing Mr. Hooker's substance abuse, psychological problems, and difficult childhood, counsel emphasized Mr. Hooker was a model prisoner who loved his children. Counsel then asked the jurors not to "act out of rage or in light of those pictures," but to instead consider all the circumstances.

While it might have been preferable for counsel to have avoided the language of the aggravator, "his statements seem a reasonable device to gain jury support before proceeding to the arguments on mitigating circumstances that were the heart of [his] strategy." *Brown*, 891 F.2d at 501. This reasonable strategy served to maintain credibility with the jury and to emphasize the mitigating factors presented. *Fox*, 200 F.3d at 1296. Counsel were, therefore, not ineffective, and we need not determine whether Mr. Hooker was prejudiced by counsel's statement. *Strickland*, 466 U.S. at 697.

## CONCLUSION

Accordingly, we **AFFIRM** the federal district court's denial of habeas corpus relief.