**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRIAN M. ABRAHAM,

        Petitioner-Appellant,

v.

STATE OF KANSAS,

        Respondent-Appellee.

No. 02-3305
(D.C. No. 00-CV-3352-DES)
(D. Kan.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL**, **HENRY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Petitioner-appellant Brian M. Abraham, who was convicted in Kansas state
court of drug-related offenses, appeals the district court's denial of his petition

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. This court granted a certificate of appealability (COA) on the following issues: (1) whether law-enforcement officers obtained an incriminating statement from Mr. Abraham in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) whether, assuming that the record demonstrates a *Miranda* violation, the admission of the statement at trial was harmless error; and (3) whether the State presented sufficient evidence at trial to support a conviction of possession of heroin with the intent to sell. Exercising our jurisdiction over these three issues, *see Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039 (2003), we affirm the judgment of the district court.

## BACKGROUND

Mr. Abraham, an individual with an extensive drug history, began serving as a confidential informant for Kansas law-enforcement officers shortly after being arrested with a large quantity of marijuana in his vehicle. He developed a particularly close working relationship with Kansas Highway Patrol Trooper Dan Meyer. In October 1995, Trooper Meyer, Mr. Abraham, and other officers arranged for a controlled sale of methamphetamine to suspects in Wichita, Kansas, identified by Mr. Abraham. Mr. Abraham's role was to assuage the suspects' doubts about the officer posing as a methamphetamine dealer, Special

Agent Brandau of the Kansas Bureau of Investigations. He was not to have direct involvement in the sale, so that he could serve as a credible witness in the case.

On the day of the sale, Mr. Abraham and Agent Brandau met in Mr. Abraham's motel room, then drove in Mr. Abraham's Jeep to the suspects' residence. While Agent Brandau traveled with two of the suspects to a second location to conduct the transaction, Mr. Abraham stayed at the residence with the remaining suspect. The controlled buy took place as planned. Agent Brandau arrested the suspects at the purchase location and, back at the residence, the third suspect was arrested. At Mr. Abraham's request, the officers attempted to conceal his cooperation by arresting him with no intention of charging him with a crime. Mr. Abraham and the other suspects were taken to the sheriff's department. Mr. Abraham's Jeep remained parked in the street in front of the residence.

Meanwhile, Agent Brandau and other officers searched the suspects' residence pursuant to a search warrant. Additionally, an officer looked into the Jeep and observed ZigZag rolling papers within the vehicle. The officer then conducted a full search of the vehicle and discovered a small amount of marijuana and a set of electronic scales. The discovery of these items raised a need to prove that Mr. Abraham was "clean," R., Tr. of Suppression Hr'g at 26-27, 29: that is,

not involved in narcotics activities unconnected with his confidential informant efforts, *id.* at 37-38. [1]

At the sheriff's department, Mr. Abraham and the other suspects were placed in separate interview rooms. Mr. Abraham understood that he was being held only to give the impression that he and the other suspects were given similar treatment. Mr. Abraham was not given *Miranda* warnings. After the discovery of the items in the Jeep, however, the officers determined that Mr. Abraham had to remain at the station until they could determine whether he was "clean." An officer was dispatched to question Mr. Abraham about the items and seek his consent to a search of his motel room. When asked about the scales, Mr. Abraham became nervous and asked to talk to Trooper Meyer. *Id.* at 64.

Trooper Meyer joined the other officer in the interview room and asked Mr. Abraham for his consent to a search. Mr. Abraham was told that he couldn't leave until the officers made sure he was "clean." *Id.* at 37. Mr. Abraham refused to give his consent, but asked for an opportunity to speak to Meyer alone. The other officer left, closing the door. Mr. Abraham told Meyer that "he had some stuff in his room that he didn't want [the officers] to find." *Id.* at 30. Meyer asked, "what do you mean by stuff[?]" *Id.* Mr. Abraham responded

---

[1]    The transcripts of the suppression hearing and preliminary hearing were admitted as substantive evidence at Mr. Abraham's bench trial. R., Tr. of Bench Trial, at 2.

-4-

that he was addicted to heroin and "stated there was a quantity of heroin and a . . . large quantity of cash in excess of $10,000 in his motel room." *Id.*

The officers obtained a search warrant of Mr. Abraham's motel room, basing probable cause on a listing of the items found in the Jeep and Mr. Abraham's admission that he kept heroin in his room. As a result of the search, officers found 4.19 grams of heroin, 1.35 grams of cocaine, approximately $10,000 in cash, and drug-related paraphernalia. Mr. Abraham was then charged with one count of possession of heroin, one count of possession of heroin with intent to sell, one count of possession of cocaine, and two counts of no drug tax stamp.

The state trial court denied Mr. Abraham's pre-trial motion to suppress his statement, along with the evidence obtained from the search of his Jeep and motel room. After a bench trial, Mr. Abraham was convicted of all charged crimes except simple possession of heroin. The Kansas Court of Appeals affirmed the conviction; the Kansas Supreme Court denied review. He then unsuccessfully sought federal habeas relief and this appeal followed.

**DISCUSSION**

A § 2254 petitioner may not receive relief unless the state court's decision was: "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law . . . ; or (2) based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2). "Factual findings of a state court are presumed correct and can be overturned by this Court only by a showing of clear and convincing evidence." *Fields v. Gibson,* 277 F.3d 1203, 1212 (10th Cir.), *cert. denied*, 123 S. Ct. 533 (2002). As for the district court's ruling, we review its legal basis de novo and its factual findings, if any, under the clearly erroneous standard. *See Hooker v. Mullin,* 293 F.3d 1232, 1237 (10th Cir. 2002), *cert denied*, 123 S. Ct. 975 (2003).

## A.    *Miranda* **violation**

"'*Miranda* requires that procedural safeguards be administered to a criminal suspect prior to 'custodial interrogation.'" *United States v. Perdue,* 8 F.3d 1455, 1463 (1993) (quoting *Miranda,* 384 U.S. at 444). A statement taken during a custodial interrogation in violation of the *Miranda* rule cannot be admitted at trial to establish the defendant's guilt. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). Further, this court has recently held that the physical fruits of a *Miranda* violation must also be suppressed. *United States v. Patane*, 304 F.3d 1013, 1029 (10th Cir. 2002), *cert. granted,* 71 U.S.L.W. 3350, 3569, 3570 (U.S. Apr. 21, 2003) (No. 02-1183).

Before *Miranda* is applicable, however, two requirements must be met: "the suspect must be in 'custody,' and the questioning must meet the legal

definition of 'interrogation.'" *Perdue,* 8 F.3d at 1463. "[A] person has been taken into police custody whenever he 'has been deprived of his freedom of action in any significant way.'" *Id.* (quoting *Miranda*, 384 U.S. at 444). The "relevant inquiry" with regard to custody is "'how a reasonable man in the suspect's position would have understood his situation.'" *Id.* (quoting *Berkemer*, 468 U.S. at 442). Concerning the second requirement, "interrogation includes 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.* (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnotes omitted)).

Here, the Kansas Court of Appeals correctly identified the controlling legal standard. Its rejection of Mr. Abraham's claim that his statement was obtained in violation of his *Miranda* rights was based on agreement with the trial court's subsidiary factual determinations that, under the circumstances of Mr. Abraham's sham arrest he was not in custody and not interrogated, and therefore not entitled to a *Miranda* warning. R., Petitioner's Ex. I at 5. Like the district court, we conclude that the state resolution of this issue was based on an unreasonable determination of the facts in light of the evidence presented.

As to the custodial prong of the *Miranda* analysis, we agree with the district court's determination that, from the time the officers discovered the items in Mr. Abraham's Jeep, he was not free to leave the sheriff's department.

Although Mr. Abraham was not in custody when he was first taken to the sheriff's department, his situation changed. After the search of the Jeep, Mr. Abraham was no longer free to leave. Indeed, an officer directly told him that "we can't let you go because we have to make sure you're clean." R., Tr. of Suppression Hr'g at 36-37. As a factual matter, Mr. Abraham's status at the sheriff's department changed from consensual to custodial when he was informed that he couldn't leave until officers obtained more information.

Moreover, we agree with the district court that the Kansas Court of Appeals' determination on the *Miranda* interrogation prong was factually erroneous. During the initial stage of his custodial status, Mr. Abraham was not interrogated. The act of asking a suspect for consent to search does not constitute an interrogation because such a request "cannot be said to lead to an incriminating response." *United States v. Gay*, 774 F.2d 368, 379 (10th Cir. 1985). Further, Mr. Abraham's statement to Trooper Meyer about the "stuff" in his room was unprovoked and voluntary. It was thus not the result of interrogation requiring *Miranda* warnings. *See Miranda*, 384 U.S. at 478.

Trooper Meyer's question regarding the meaning of "stuff," however, was certainly designed to elicit information on contraband in Mr. Abraham's motel room. As a consequence, Mr. Abraham's inculpatory response was the product of interrogation. Accordingly, the two *Miranda* requirements are met and the state

court's finding to the contrary is clearly erroneous. The statement was obtained in violation of *Miranda* and its admission at trial amounted to an error of constitutional magnitude. *See Dickerson v. United States*, 530 U.S. 428, 438, 444 (2000).

**B.    Harmless error**

Although we have determined that the state court erred in admitting Mr. Abraham's statement at trial, this conclusion, standing alone, does not merit federal habeas relief. We may grant federal habeas only if the error "had substantial and injurious effect or influence" on the outcome of a petitioner's case. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted); *Herrera v. Lemaster*, 301 F.3d 1192, 1198, 1200 (10th Cir. 2002), *cert. denied*, 123 S. Ct. 1266 (2003). A petitioner must establish that the error "resulted in actual prejudice." *Brecht*, 507 U.S. at 637 (quotation omitted). While we reject the district court's reasoning on this issue, we agree with its conclusion that admission of the un-*Mirandized* statement amounted to harmless error.

According to the district court, evidence derived from a non-coercive interview which technically violated *Miranda* need not be suppressed. Therefore, the state trial court properly admitted into evidence the narcotics and cash seized from Mr. Abraham's motel room, significantly diminishing the import of

Mr. Abraham's statement. This conclusion, however, was reached without the benefit of our recent decision in *United States v. Patane*, 304 F.3d 1013. In that case, we explicitly held that the physical fruits of a *Miranda* violation must be excluded from evidence, because "suppression of the statement alone" does not "provide[] deterrence sufficient to protect citizens' constitutional privilege against self-incrimination." *Id.* at 1028-29. The *Patane* holding is controlling in this case. In determining that the admission of the un-*Mirandized* statement was harmless because the fruits of that statement were properly admitted, the federal district court clearly erred. [2]

Nevertheless, we conclude that the admission of the statement amounted to harmless error. The Supreme Court has adopted "the ultimate or inevitable discovery exception to the exclusionary rule." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Under this doctrine, "if evidence seized unlawfully would have been inevitably discovered pursuant to a legal search, the evidence is admissible." *United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997).

Here, the drugs and money would have been inevitably discovered even without Trooper Meyer's question and Mr. Abraham's response. Law

---

[2]     As noted previously, the United States Supreme Court has granted certiorari to review our *Patane* ruling. However, that need not hold up this order and judgment because, even if the Supreme Court reverses our holding in *Patane*, our disposition in this case would not be affected.

enforcement officials knew that Mr. Abraham had an extensive drug history, that ZigZag papers were found in his car, that electronic scales were found in his car, and that he had volunteered that he had "stuff" in his motel room which he did not want the officers to find. Under these circumstances, it was virtually inevitable that the police would have obtained a search warrant to search Mr. Abraham's motel room and thereby discovered the drugs and money. Thus, the additional introduction of Mr. Abraham's statement would not change the outcome of his trial. Accordingly, we hold that the error in admitting Mr. Abraham's inculpatory statement was harmless.

### C. Sufficiency of the evidence

Mr. Abraham also challenges the sufficiency of the evidence supporting his conviction of possession of heroin with the intent to sell. The appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Our review of the evidence produced at trial reflects that the district court was correct in concluding that a rational factfinder could have found that Mr. Abraham intended to sell the heroin seized from his motel room. Agent Brandau, a trained narcotics investigator, testified that, based on his experience and training, the amount of drugs and money–all found in the motel room of a

person with a lengthy drug history and no known means of employment–showed that the heroin was for resale, rather than personal use. Specifically, Agent Brandau stated that the amount of heroin, 4.19 grams, was "a significant amount of heroin for individual dose usage, especially when they sell it commonly in dose units, a small one injection amount." R., Tr. of Prelim. Hr'g at 53. Mr. Abraham testified that the heroin was for his personal use only.

This court must presume that the trial court resolved conflicting testimony in favor of the prosecution. *Wright v. West*, 505 U.S. 277, 296-97 (1992). A rational trier of fact, when considering the evidence in favor of the prosecution, certainly could have found the crime of possession of heroin with intent to sell was proven beyond a reasonable doubt.

**CONCLUSION**

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge